IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LUIS FELICIANO-MUÑOZ AND AIR AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> FRED REBARBER-OCASIO, <br><br> Defendant. | CIVIL NO.: 16-2719 (MEL) |

**OPINION AND ORDER**

Luis A. Feliciano-Muñoz and Air America, Inc. ("Plaintiffs") filed an amended complaint against Fred Rebarber-Occasio ("Defendant") on April 28, 2017. ECF No. 16. Plaintiffs alleged a "breach of contract arising from the false representations and warranties of the Defendant regarding [Air America, Inc.]'s compliance with applicable [Federal Aviation Administration] laws and regulations." Id. at 5. Pending before the court is Defendant's motion for summary judgment. ECF No. 40. Defendant argues in his motion for summary judgment that Air America, Inc. was operating in compliance with Federal Aviation Administration (FAA) regulations. Even if Air America, Inc. was not operating in compliance with FAA regulations, Defendant contends, summary judgment should be granted because Mr. Feliciano-Muñoz bought Air America, Inc. "as is" and because Mr. Feliciano-Muñoz had previous experience buying and owning aircrafts and hired consultants to assist him with the purchase. Defendant also argues that the court lacks jurisdiction over the matter due to Plaintiffs' failure to exhaust intra-corporate remedies and that Plaintiffs' payment of $250,000 to Defendant constituted an accord and satisfaction.[1]  In their

---

[1] The payment schedule for the purchase of Air America, Inc. was as follows: $100,000 was paid on November 12, 2014 as a deposit upon acceptance of the offer; $950,000 was paid when the agreement was signed, and a final payment of $250,000 was due 12 months after the agreement was signed. ECF Nos. 42, at 3, ¶ 15; 56, at 3, ¶ 15. The SPA

response in opposition, Plaintiffs deny the arguments made within Defendant's motion for summary judgment. ECF No. 55. Defendant subsequently filed a reply to Plaintiffs' opposition. ECF No. 72.

## I.   STANDARD OF REVIEW

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992) (citations omitted). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant presents a properly focused motion "averring 'an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). For issues where the nonmoving party bears the ultimate burden of proof, the party cannot merely "rely on an absence of competent evidence, but must affirmatively point to specific facts [in the record] that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d

---

provided that a lien would be imposed upon Aircraft Beechcraft King Air E-90 to secure the final payment of $250,000. ECF Nos. 42, at 4, ¶ 16; 56, at 3, ¶ 16.

313, 315 (1st Cir. 1995) (citation omitted).  The party need not, however, "rely only on *uncontradicted* evidence . . . .  So long as the [party]'s evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version of the facts is most compelling."  Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original) (citation omitted).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor."  Griggs-Ryan, 904 F.2d at 115 (citations omitted).  There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood."  Greenburg v. P. R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987).  The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation."  Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

## II. UNCONTESTED MATERIAL FACTS[2]

In September 2014, Air America, Inc. was a corporation organized pursuant to the General Corporations Act of Puerto Rico, which provided airline services.  ECF Nos. 42, at 1, ¶ 1; 56, at 1, ¶ 1.  Defendant was the owner of all its shares.  ECF Nos. 42, at 1, ¶ 2; 56, at 1, ¶ 2.

On September 30, 2014, Mr. Feliciano-Muñoz issued a first Letter of Intent (LOI) to

---

[2] Local Rule of Civil Procedure 56 provides that a party replying to the opposition to a motion for summary judgment shall submit with its reply a separate, short, and concise statement of material facts, which shall be limited to any additional facts submitted by the opposing party.  The reply statement shall admit, deny or qualify those additional facts.  Here, Defendant replied to Plaintiffs' opposition to his motion for summary judgment.  However, Defendant did not admit, deny, or qualify the additional facts submitted by Plaintiffs.  Instead, Defendant used his reply to submit additional facts of his own.  In accordance with Local Rule of Civil Procedure 56, Plaintiffs' additional facts will be taken into account, and Defendant's additional facts will be disregarded for purposes of this motion.

Defendant, with the purpose of buying 100% of Air America, Inc.'s shares for $1,500,000. ECF Nos. 42, at 2, ¶ 9; 56, at 2, ¶ 9. On October 21, 2014, Defendant sent an email in which he stated that he was not accepting the terms of the LOI. ECF Nos. 42, at 2–3, ¶ 10; 56, at 2, ¶ 10.[3] On November 6, 2014, Mr. Feliciano-Muñoz issued a second LOI to Defendant with the purpose of buying 80% of Air America, Inc.'s shares for $1,300,000. ECF Nos. 42, at 3, ¶ 11; 56, at 2, ¶ 11. Defendant did not sign the LOI. Id. On November 12, 2014, Mr. Feliciano-Muñoz issued a third LOI to Defendant with the purpose of buying 80% of Air America, Inc.'s shares for $1,300,000. ECF Nos. 42, at 3, ¶ 12; 56, at 2, ¶ 12. Defendant signed the third LOI. Id.

Mr. Feliciano-Muñoz had previous experience buying and owning airplanes. ECF Nos. 42, at 8, ¶ 51; 56, at 5, ¶ 51. However, the airplanes Mr. Feliciano-Muñoz previously owned were small one-passenger, one-engine Cub Pipers, which are very different from Air America, Inc.'s multi-engine, multi-passenger commercial airplanes. ECF No. 56, at 9, ¶ 10.

Between September and December 2014, Mr. Feliciano-Muñoz retained Manuel Nicolás Moreda, Diego Perdomo, and Verlyn Wolfe as consultants to assist him with the purchase. ECF Nos. 42, at 2, ¶¶ 3–7; 56, at 1, ¶¶ 3–7. Mr. Moreda is a certified public accountant associated with Porto Capital, a company which provides restructuring, startup, tax planning, and CFO services. ECF Nos. 42, at 2, ¶ 4; 56, at 1, ¶ 4. Mr. Perdomo is a certified public accountant associated with Perdomo Ferrer CPAs and Consultants. ECF Nos. 42, at 2, ¶ 6; 56, at 1, ¶ 6. Mr. Wolfe is an aviation consultant and is associated with Wolfe Aviation, a company engaged in aircraft acquisitions, sales, and services. ECF Nos. 42, at 8, ¶ 6; 56, at 1, ¶ 8. Defendant provided Mr. Feliciano-Muñoz with spreadsheets containing information about the aircrafts, which had been

---

[3] Plaintiffs have denied Defendant's factual paragraph 10. Specifically, Plaintiffs argue that the stock purchase agreement contains language to safeguard Mr. Feliciano-Muñoz's investment. This argument does not contradict the facts alleged. Thus, these facts are admitted.

requested by Mr. Wolfe.  ECF Nos. 42, at 6, ¶ 37; 56, at 4, ¶ 37.  Mr. Feliciano-Muñoz also provided Mr. Wolfe with a list of the serial numbers of the aircrafts that he had requested from Defendant.  ECF Nos. 42, at 8, ¶ 53; 56, at 5, ¶ 53.  At least one of Mr. Feliciano-Muñoz's consultants advised him to walk away from the business deal, but he did not.  ECF Nos. 42, at 9, ¶ 55; 56, at 5, ¶ 55.

On December 17, 2014, Mr. Feliciano-Muñoz and Defendant signed a Stock Purchase Agreement (SPA).  ECF Nos. 42, at 3, ¶ 13; 56, at 2, ¶ 13.  Under the SPA, Defendant would sell 80% of his shares to Mr. Feliciano-Muñoz for $1,300,000.  ECF Nos. 42, at 3, ¶ 15; 56, at 3, ¶ 15.[4]  Mr. Feliciano-Muñoz would thereby assume control of the operations of the company and of the Board of Directors.  ECF No. 56, at 6, ¶ 1.  The SPA stated that the licenses of the corporation were in full force and effect, that no violations had been or were expected to be recorded, and that the business was being operated in compliance with such licenses.  ECF Nos. 42, at 4, ¶ 18; 56, at 3, ¶ 18.

At or around the time of the SPA, Mr. Feliciano-Muñoz, along with Mr. Moreda, took photographs of the company's aircrafts, as well as two photographs of the interior of the N30PT aircraft.  ECF Nos. 42, at 4, ¶¶ 19–20; 56, at 3, ¶¶ 19–20.  However, prior to the purchase, Defendant had not allowed Mr. Feliciano-Muñoz to inspect the airplanes' mechanical equipment, alleging that it would hurt the morale of his employees if they thought that he was selling Air America, Inc.  ECF No. 56, at 6, ¶ 2.  Instead, Defendant assured Mr. Feliciano-Muñoz that Air America, Inc. was operating in compliance with FAA regulations.  Id.  Defendant also made representations to Mr. Feliciano-Muñoz that the airplanes were in excellent condition.  ECF Nos.

---

[4] Plaintiffs have denied Defendant's factual paragraph 15.  Specifically, Plaintiffs argue that the SPA contains language to safeguard Mr. Feliciano-Muñoz's investment.  This argument does not contradict the facts alleged.  Thus, these facts are admitted.

42, at 9, ¶ 56; 56, at 5–6, ¶¶ 2, 56.  Further, Mr. Feliciano-Muñoz evaluated Air America, Inc.'s financial records and aircraft flight and maintenance logbooks, from which it appeared that as of December 14, 2014, Air America, Inc. was operating in compliance with FAA regulations and that its aircrafts were in excellent condition.  ECF Nos. 42, at 8, ¶ 48; 56, at 5–7, ¶¶ 2, 48.  There were no entries in the flight and maintenance records of the aircrafts that would ground any of them, other than scheduled inspections or routine maintenance.  ECF Nos. 42, at 8, ¶ 49; 56, at 5, ¶ 49.  Lastly, Defendant made representations to Mr. Feliciano-Muñoz that Air America, Inc. could operate with the two full-time pilots and one part-time pilot who already worked for the company.  ECF Nos. 42, at 9, ¶ 58; 56, at 5, 8–9, ¶¶ 9, 58.

Regarding the condition of the aircrafts, first, Aircraft N707TL flight and maintenance records reflect that after December 17, 2014, the aircraft flew without any discrepancies being noted until December 28, 2014, when a generator warning light illuminated, which was corrected the same day.  ECF Nos. 42, at 7, ¶ 39; 56, at 4, ¶ 39.[5]  Second, Aircraft N21WW flight and maintenance records reflect that the aircraft flew without any discrepancies being noted from December 17, 2014 to January 7, 2015, when a light in the cockpit was noted as inoperative.  ECF Nos. 42, at 7, ¶ 40; 56, at 4, ¶ 40.  The light was repaired on January 9, 2015, and the aircraft flew without any discrepancies being noted until January 21, 2015, when a scheduled maintenance was performed.  ECF Nos. 42, at 7, ¶ 41; 56, at 4, ¶ 41.  Third, Aircraft N62749 flight and maintenance records reflect that after December 17, 2014, the aircraft flew without any discrepancies being noted until January 4, 2015, when a scheduled maintenance was performed.  ECF Nos. 42, at 7, ¶

---

[5] Defendant's statement of facts in support of his motion for summary judgment incorrectly states that Aircraft N707TL flight and maintenance records reflect that after December 28, 2014, the aircraft flew without any discrepancies being noted until December 28, 2014.

43; 56, at 4, ¶ 43.[6]  Fourth, Aircraft N2395Z was flying from December 17, 2014 to January 8, 2015, when a discrepancy regarding the cabin door was noted.  ECF Nos. 42, at 7, ¶ 44; 56, at 4, ¶ 44.  Fifth, Aircraft N7049T flight and maintenance records reflect that after December 17, 2014, the aircraft flew until December 29, 2014, when a magnet was noted as inoperative.  ECF Nos. 42, at 7, ¶ 45; 56, at 4, ¶ 45.  The aircraft continued to fly from December 29, 2014 until February 10, 2015, when the right generator light reflected an over voltage.  ECF Nos. 42, at 8, ¶ 46; 56, at 5, ¶ 46.  Sixth, the status of the propeller on Aircraft N30PT appeared on a spreadsheet which was sent to Mr. Wolfe.  ECF Nos. 42, at 6, ¶ 38; 56, at 4, ¶ 38.

Mr. Feliciano-Muñoz claims that by December 23, 2014, he had discovered that the aircrafts had maintenance and repair issues that placed Air America, Inc.'s licenses and permits at risk, which were not recorded on the logbooks.  ECF No. 56, at 7–8, ¶¶ 5, 8.  Mr. Feliciano-Muñoz claims that he also realized that Air America, Inc. needed more pilots than what Defendant had represented.  ECF No. 56, at 8–9, ¶ 9.  Thus, Air America, Inc. had to pay for repairs and purchase new equipment.  ECF No. 56, at 7–8, ¶ 5.  Air America, Inc. incurred additional expenses, such as the cost of chartering flights.  Id.

Around one year later, on November 16, 2015, Mr. Feliciano-Muñoz sent a letter to Defendant, informing him that he was "exercising his right to set off an indemnity claim" against Defendant in the amount of $250,000 and requesting an additional amount of $25,395.46.  ECF Nos. 42, at 5, ¶ 26; 56, at 3, ¶ 26.

### III.  PLAINTIFFS' ALLEGATIONS IN THE AMENDED COMPLAINT

Before addressing Defendant's arguments in favor of summary judgment, the court must

---

[6] Defendant's statement of facts in support of his motion for summary judgment incorrectly states that Aircraft N62749 flight and maintenance records reflect that after December 17, 2014, the aircraft flew without any discrepancies being noted until January 4, 2014.

7

pin down the nature of Plaintiffs' allegations in the amended complaint, which remain elusive. In the amended complaint, Plaintiffs alleged a "breach of contract arising from the false representations and warranties of the Defendant regarding [Air America, Inc.]'s compliance with applicable FAA laws and regulations." ECF No. 16, at 5. The court finds that while Plaintiffs have spoken the language of breach of contract, what Plaintiffs are in essence alleging is a claim of deceit, known as "dolo" under Puerto Rico contract law.

A discussion of the parameters of a deceit claim may prove illuminating. Under Puerto Rico contract law, deceit that affects a contracting party is commonly referred to as dolo. P.C.M.E. Commercial, S.E. v. Pace Membership Warehouse, Inc., 952 F. Supp. 84, 92 (D.P.R. 1997). Contractual deceit has two basic applications, which are regulated by the Civil Code of Puerto Rico. Id. One application refers to deceit in the formation of the contract, and the other refers to deceit in the performance of contractual obligations. Id. Under the first application, "[t]here is 'dolo' when by words or insidious machinations on the part of one of the contracting parties[,] the other is induced to execute a contract which without he would not have made." Id. (quoting Civil Code of Puerto Rico, article 1221, P.R. Laws Ann. tit. 31 sec. 3408). Deceit in the formation of a contract can be either "substantial," when it determines the consent of the parties, or "incidental," when it merely influences the consent. Id. A finding of "substantial" deceit would result in the nullity of the contract, whereas "incidental" deceit would give rise to a claim for damages. Id. Under the second application, deceit can be manifested in the performance of contractual obligations when a party "knowingly and intentionally, through deceitful means, avoids complying with its contractual obligation." Generadora De Electricidad Del Caribe, Inc. v. Foster Wheeler Corp., 92 F. Supp. 2d 8, 18 (D.P.R. 2000).

In order to prove deceit (or "dolo"), the plaintiff must demonstrate the intentional fault or

bad faith of the person to whom it is imputed. P.C.M.E. Commercial, 952 F. Supp. at 93 (quoting Citibank v. Dependable, 121 P.R. Dec. 503, 519 (1987)). Specifically, the party alleging deceit has the burden of demonstrating: (1) a false representation by the defendant; (2) the plaintiff's reasonable and foreseeable reliance on the representation; (3) injury to the plaintiff as a result of the reliance; and (4) an intent to defraud. Kellogg USA v. B. Fernandez Hermanos, Inc., No. 07-1213 (GAG/BJM), 2010 WL 376326, at *12 (D.P.R. Jan. 27, 2010). However, for deceit to exist, "[a] mischievous act is not needed, but only the debtor's knowledge of his/her own lack of compliance, with the consciousness that the creditor's expectations will be affected." Huongsten Prod. Imp. & Exp. Co. v. Sanco Metals LLC, 810 F. Supp. 2d 418, 428 (D.P.R. 2011) (quoting Century Packing Corp. v. Giffin Specialty Equip. Co., LLC, 438 F.Supp.2d 16, 26 (D.P.R.2006)).

Lastly, in determining whether the plaintiff reasonably relied on the false representation, Puerto Rico courts place considerable weight on the education, social background, economic status, and business experience of the party alleging deceit. Citibank Glob. Markets, Inc. v. Rodríguez Santana, 573 F.3d 17, 29 (1st Cir. 2009) ("In the present case, of course, the party seeking to invalidate the contract was a wealthy and accomplished attorney experienced enough to have a portfolio that generated in excess of a million dollars in brokerage commissions. Fernández's sophistication, coupled with his failure to allege sufficient, colorable bad faith on the part of Smith Barney, defeats any claimed dolo in this case."). See also Kellogg USA, 2010 WL 376326, at *13 ("Given the business sophistication of BFH and CWL, the review of the 2004 agreement by four of the companies' executives, and Mr. Texidor's admission that he consulted with an attorney prior to signing the agreement, it would be unreasonable as a matter of law for BFH to have relied on Kellogg's alleged misrepresentation."); Citibank v. Dependable Ins. Co., 21 P.R. Offic. Trans. 496, 513–14 (1988) ("The agreement was drawn after several meetings

between competent individuals, knowledgeable in banking and insurance matters, advised by their respective attorneys. In these meetings they discussed the terms of the settlement and the parties had access to the information pertinent to the same. Citibank had the opportunity of examining, studying, and reviewing the settlement before it was signed."); Miranda Soto v. Mena Ero, 9 P.R. Offic. Trans. 628, 633 (1980) ("The trial court's finding[ ] . . . is not convincing. . . . [I]t overlooks the fact that Miranda is not an ignorant or uneducated person who is easy to manipulate. He is, on the contrary, a real estate broker, presumably an experienced businessman, who had dealings with lawyers and large-scale investors[.]").

Turning to the matter at hand, it is clear that Plaintiffs are alleging deceit in the formation of the contract, and neither deceit in the performance of contractual obligations nor breach of contract. This is due to the fact that in the amended complaint, Plaintiffs allege that Defendant made "false representations . . . regarding [Air America, Inc.]'s compliance with applicable FAA laws and regulations." ECF No. 16, at 5. While Plaintiffs did invoke the term "breach of contract," and not "deceit," it should come as no surprise to Defendant that Plaintiffs are in fact bringing a deceit claim for two reasons. First, in the joint proposed pretrial report, Plaintiffs argue that "Defendant's actions constitute deceit in the formation of the contractual relationship (also known as 'dolo' under the Code)." ECF No. 75, at 2. Second, in his motion for summary judgment, Defendant raises some arguments which are relevant to a deceit claim, and not relevant to a breach of contract claim. Specifically, Defendant argues that summary judgment should be granted because Mr. Feliciano-Muñoz had previous experience buying and owning aircrafts and because he retained three consultants to assist him with the purchase. Mr. Feliciano-Muñoz's previous experience buying and owning aircrafts and hiring of consultants is irrelevant to the question of whether Defendant later breached the terms of the contract between him and Mr. Feliciano-Muñoz.

Based on the foregoing discussion, the court will construe Plaintiffs' amended complaint as raising a deceit ("dolo") claim, and not a breach of contract claim. To the extent that the amended complaint may be interpreted as raising a breach of contract claim, that claim is dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to meet the plausibility standard set forth by the Supreme Court in Ashcroft v. Iqbal. 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). It follows that Defendant's arguments addressing Plaintiffs' breach of contract claim, specifically, that Plaintiffs' payment of $250,000 to Defendant constituted an accord and satisfaction, are moot.[7] The court will only address those of Defendant's arguments that go to the question of whether he is entitled to summary judgment on Plaintiffs' deceit claim.

## IV. DEFENDANT'S ARGUMENTS

### A. Air America, Inc.'s Compliance with FAA Laws and Regulations.

Defendant contends that Air America, Inc. was in compliance with FAA laws and regulations, and thus, that summary judgment should be granted. Defendant's contention is important because if Air America, Inc. was in compliance with FAA laws and regulations, then Defendant could not have made false representations to Mr. Feliciano-Muñoz.

---

[7] Defendant also argues that Mr. Feliciano-Muñoz bought Air America, Inc. "as is." This constitutes a disputed fact. On the one hand, the second LOI was not signed because it contained terms such as "offer subject to" or "satisfaction to buyer." There were no references in the third LOI to conditions such as "offer subject to" or "satisfaction to buyer." On the other, Defendant made oral representations to Mr. Feliciano-Muñoz that the airplanes were in excellent condition. ECF Nos. 42, at 9, ¶ 56; 56, at 5–6, ¶¶ 2, 56. There are no references in the SPA to conditions such as "offer subject to" or "satisfaction to buyer." ECF Nos. 42, at 3, ¶ 14; 56, at 2–3, ¶ 14. However, the dispute over this fact will not preclude the court from granting summary judgment because it is not material. As discussed below, Mr. Feliciano-Muñoz had previous experience buying and owning aircrafts and retained three consultants to assist him with the purchase. If anything, Defendant's insistence that the LOI contain no references to conditions such as "offer subject to" or "satisfaction to buyer" should have alerted Mr. Feliciano-Muñoz of the need to demand a mechanical inspection of the aircrafts.

Defendant relies on the condition of the aircrafts to assert that they did not have maintenance and repair issues at the time that the SPA was executed. A generator warning light in Aircraft N707TL illuminated on December 28, 2014 (ECF Nos. 42, at 7, ¶ 39; 56, at 4, ¶ 39); a light in the cockpit of Aircraft N21WW was noted as inoperative on January 7, 2015 (ECF Nos. 42, at 7, ¶ 40; 56, at 4, ¶ 40); a discrepancy regarding the cabin door of Aircraft N2395Z was noted on January 8, 2015 (ECF Nos. 42, at 7, ¶ 44; 56, at 4, ¶ 44); a magnet in Aircraft N7049T was noted as inoperative on December 29, 2014 (ECF Nos. 42, at 7, ¶ 45; 56, at 4, ¶ 45); and the right generator light of Aircraft N7049T reflected an over voltage on February 10, 2015 (ECF Nos. 42, at 8, ¶ 46; 56, at 5, ¶ 46). These facts contradict Plaintiffs' claim that Mr. Feliciano-Muñoz discovered that aircrafts N707TL, N21WW, N2395Z, and N7049T had maintenance and repair issues by December 23, 2014, shortly after the purchase.[8]

In response, Plaintiffs proffer their expert in airplane operations, Luis Irizarry, who concluded that there were no entries in the logbooks of any discrepancies or maintenance issues for a long time, which indicates that no entries of necessary mechanical repairs were made in order to conceal the fact that the aircrafts were not in airworthy condition and to continue operating them without investing in the necessary repairs. ECF No. 56, at 10, ¶ 13. Given that on summary judgment, all reasonable inferences must be drawn in favor of the nonmoving party, it is hereby concluded that a reasonable jury could find that Defendant made false representations concerning aircrafts N707TL, N21WW, N2395Z, N7049T, and N62749 to Mr. Feliciano-Muñoz.

Defendant also argues that the status of the propeller on Aircraft N30PT appeared on a spreadsheet which was sent to Mr. Wolfe. ECF Nos. 42, at 6, ¶ 38; 56, at 4, ¶ 38. Further, at or

---

[8] Aircraft N62749's flight and maintenance records reflect that after December 17, 2014, the aircraft flew without any discrepancies being noted until January 4, 2015, when a scheduled maintenance was performed. ECF Nos. 42, at 7, ¶ 43; 56, at 4, ¶ 43. This fact also contradicts Plaintiffs' claim that Mr. Feliciano-Muñoz discovered the aircrafts' maintenance and repair issues by December 23, 2014.

around the time of the SPA, Mr. Feliciano-Muñoz took two photographs of Aircraft N30PT, which reflect that the aircraft lacked avionic equipment and passenger seats. ECF Nos. 42, at 4, ¶¶ 19–20; 56, at 3, ¶¶ 19–20. However, Plaintiff has not alleged that Defendant made false representations *solely* regarding the status of the propeller on Aircraft N30PT, as well as the aircraft's lack of avionic equipment and passenger seats. Thus, once again, a reasonable jury could find that Defendant made false representations concerning other aspects of Aircraft N30PT to Mr. Feliciano-Muñoz.

### B. Mr. Feliciano-Muñoz's Previous Experience Buying and Owning Aircrafts and Hiring of Consultants.

Defendant contends that summary judgment should be granted because Mr. Feliciano-Muñoz had previous experience buying and owning aircrafts and because he retained three consultants to assist him with the purchase. This is relevant because in determining whether the plaintiff reasonably relied on the false representation, considerable weight is placed on the education, social background, economic status, and business experience of the party alleging deceit. Citibank Glob. Markets, 573 F.3d at 29.

Here, Mr. Feliciano-Muñoz had previous experience buying and owning airplanes. ECF Nos. 42, at 8, ¶ 51; 56, at 5, ¶ 51. While the airplanes Mr. Feliciano-Muñoz previously owned may have been small one-passenger, one-engine Cub Pipers, and not multi-engine, multi-passenger commercial airplanes, it does not follow that Mr. Feliciano-Muñoz was "an ignorant or uneducated person who [wa]s easy to manipulate." Miranda Soto, 9 P.R. Offic. Trans. at 633. Mr. Feliciano-Muñoz more closely resembles the business-savvy entities and individuals deemed by the First Circuit and the Supreme Court of Puerto Rico to have unreasonably relied on certain representations in other cases. See Citibank Glob. Markets, 573 F.3d at 29; Kellogg USA, 2010 WL 376326, at *13; Dependable Ins. Co., 21 P.R. Offic. Trans. at 513–14; Miranda Soto, 9 P.R.

13

Offic. Trans. at 633.

Further, any gaps in Mr. Feliciano-Muñoz's knowledge were mitigated by his hiring of not one, but *three* consultants to assist him with the purchase. ECF Nos. 42, at 2, ¶¶ 3–7; 56, at 1, ¶¶ 3–7. It is true that two of the three consultants he retained were certified public accountants who may not have had specialized knowledge in the field of aircraft acquisitions. ECF Nos. 42, at 2, ¶¶ 4, 6; 56, at 1, ¶¶ 4, 6. However, Mr. Feliciano-Muñoz also retained Verlyn Wolfe, an aviation consultant associated with a company engaged in aircraft acquisitions, sales, and services. ECF Nos. 42, at 8, ¶ 6; 56, at 1, ¶ 8. Defendant provided Mr. Feliciano-Muñoz with spreadsheets containing information about the aircrafts, which had been requested by Mr. Wolfe. ECF Nos. 42, at 6, ¶ 37; 56, at 4, ¶ 37. Mr. Feliciano-Muñoz also provided Mr. Wolfe with a list of the serial numbers of the aircrafts that he had requested from Defendant. ECF Nos. 42, at 8, ¶ 53; 56, at 5, ¶ 53. Thus, at the time of the purchase, Mr. Feliciano-Muñoz was even better equipped than the entities and individuals deemed by the First Circuit and the Supreme Court of Puerto Rico to have unreasonably relied on certain representations because they had the assistance of counsel during the formation of the contracts. See Kellogg USA, 2010 WL 376326, at *13; Dependable Ins. Co., 21 P.R. Offic. Trans. at 513–14.[9]

Mr. Feliciano-Muñoz could not maintain a "dolo" claim against Defendant even if all three of his consultants failed to exercise due diligence. However, that does not appear to be the case here. It is undisputed that at least one of Mr. Feliciano-Muñoz's consultants advised him to walk away from the business deal, but he did not. ECF Nos. 42, at 9, ¶ 55; 56, at 5, ¶ 55.

---

[9] Plaintiffs' sole evidence that the aircrafts were not in airworthy condition *on December 17, 2014* is limited to an inspection by Mr. Irizarry of the maintenance logbooks. It is unclear why Plaintiffs' three consultants could not have discovered the alleged issues with the logbooks before the SPA. Further, the summary judgment record does not cite to any expert testimony from which a jury could infer or conclude that the mechanical issues that arose subsequent to the execution of the SPA existed prior to December 17, 2014.

Lastly, Plaintiffs' assertion that Defendant refused to allow Mr. Feliciano-Muñoz to inspect the engines of the aircrafts prior to the SPA is to no avail. As a sophisticated buyer, Mr. Feliciano-Muñoz could have insisted that inspection of the aircrafts was an essential precondition to the execution of the SPA.

In sum, Mr. Feliciano-Muñoz had previous experience buying and owning aircrafts and retained three consultants to assist him with the purchase, one of whom was an aviation consultant. At least one of these consultants advised him to walk away from the business deal. However, Mr. Feliciano-Muñoz threw caution to the wind and chose to rely on Defendant's representations that Air America, Inc. was operating in compliance with FAA regulations and that the airplanes were in excellent condition, rather than insisting on a mechanical inspection. These representations may very well have been false. However, a deceit (or "dolo") claim requires not only a false representation, but *reasonable* reliance thereupon. Under these circumstances, the court concludes that no jury could find *reasonable* reliance in this case.

### C.     Plaintiffs' Failure to Exhaust Intra-Corporate Remedies.

Defendant contends that Plaintiffs' failure to exhaust intra-corporate remedies warrants summary judgment. Specifically, Defendant argues that Plaintiffs' suit constitutes a shareholder derivative suit. Before bringing a derivative suit, the shareholder must request permission to sue from the Board of Directors. Here, Defendant alleges, Plaintiffs did not consult Air America, Inc.'s Board of Directors prior to bringing the suit. Thus, summary judgment is warranted.

Defendant's argument lacks merit. A derivative action permits a shareholder to bring suit to enforce rights the corporation is unable or unwilling to enforce on its own behalf. Union de Empleados de Muelles de Puerto Rico PRSSA Welfare Plan v. UBS Fin. Servs. Inc. of Puerto Rico, 704 F.3d 155, 159 (1st Cir. 2013). Plaintiffs are asserting a cause of action belonging to Mr.

Feliciano-Muñoz, and not to Air America, Inc.  Nonetheless, the court finds that summary judgment should be granted with regard to Air America, Inc.'s deceit claim because Air America, Inc. lacks standing.

The Constitution of the United States limits the jurisdiction of federal courts to "cases" or "controversies."  U.S. CONST. art III, § II, cl. 1.  The requirement that a plaintiff have standing is an essential part of the case or controversy requirement.  See, e.g., Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992).  The Supreme Court has established that the constitutional minimum of standing contains three elements.  Id.  First, the plaintiff must have suffered an "injury in fact" which is concrete and particularized.  Id.  Second, there must be a causal connection between the injury and the conduct complained of.  Id.  Third, the injury must be likely to be redressed by a decision in the plaintiff's favor.  Id. at 61.

Here, it is clear that Air America, Inc. has not even met the threshold requirement of an injury.  This case arises from the purchase of 80% of Air America, Inc.'s shares by Mr. Feliciano-Muñoz from Defendant.  Mr. Feliciano-Muñoz alleges that during the formation of the contract between him and Defendant, Defendant made false representations regarding Air America, Inc.'s compliance with applicable FAA laws and regulations.  Air America, Inc. was not a party to the transaction between Mr. Feliciano-Muñoz and Defendant; in fact, it was the *subject* of that transaction.  It follows that Defendant could not have made false representations to Air America, Inc. during the formation of the contract between him and Mr. Feliciano-Muñoz because Air America, Inc. was not a party to the contract.  Thus, Air America, Inc. has not suffered an injury for purposes of the standing requirement and cannot constitutionally bring a deceit claim against Defendant.

V.   CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 40) is GRANTED.  The complaint is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED

In San Juan, Puerto Rico, this 28th day of September, 2018.

s/Marcos E. López  
U.S. Magistrate Judge