IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUIS FELICIANO-MUÑOZ AND AIR AMERICA, INC.,

    Plaintiffs,

v.

FRED REBARBER-OCASIO,

    Defendant.

CIVIL NO.: 16-2719 (MEL)

**OPINION AND ORDER**

Pending before the court is Mr. Fred Rebarber-Ocasio's ("Defendant") motion for summary judgment against Mr. Luis Feliciano-Muñoz and Air America, Inc. ("Plaintiffs") on remand from the United States Court of Appeals for the First Circuit. ECF No. 40. The court's analysis of the pending motion for summary judgment is limited in scope to Mr. Feliciano-Muñoz's breach of contract claim.

**I.     Procedural History**

Plaintiffs filed an amended complaint against Defendant on April 28, 2017. ECF No. 16. Plaintiffs alleged a "breach of contract arising from the false representations and warranties of the Defendant regarding [Air America, Inc.]'s compliance with applicable [Federal Aviation Administration] law and regulations." Id. at 6. Mr. Feliciano-Muñoz claimed that upon taking control of Air America, Inc. that he discovered that key equipment on six aircrafts were either broken or inoperative which required him to ground the aircraft for necessary repairs. Id. at 2. On January 16, 2018, Defendant filed a motion for summary judgment arguing that Air America, Inc. was operating in compliance with Federal Aviation Administration ("FAA") regulations. ECF Nos. 41, 42. Defendant argues in the alternative that even if Air America, Inc. was not in

compliance with FAA regulations, summary judgment should be granted because Mr. Feliciano-Muñoz bought Air America, Inc. "as is" and because Mr. Feliciano-Muñoz had previous experience buying and owning aircrafts and hired consultants to assist him with the purchase. Defendant also argues that the court lacked jurisdiction over the matter due to Plaintiffs' failure to exhaust intra-corporate remedies and that Mr. Feliciano-Muñoz's payment of $250,000 to Defendant constituted an accord and satisfaction. Plaintiffs filed a response in opposition on March 1, 2018. ECF No. 55. On April 16, 2018, Defendant subsequently filed a reply to Plaintiffs' opposition. ECF No. 72.

On September 28, 2018, the district court issued an opinion and order granting Defendant's motion for summary judgment. ECF No. 99. The district court found that Mr. Feliciano-Muñoz's allegations in the amended complaint were "elusive," and determined that "while Plaintiffs have spoken the language of breach of contract, what Plaintiffs are in essence alleging is a claim of deceit, known as 'dolo' under Puerto Rico contract law." Id. at 8. The district court dismissed the breach of contract claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim to relief that is plausible on its face. Id. at 11. Next, the district court proceeded to apply the test for deceit in the formation of the contract under the summary judgment standard. The district court found that while a reasonable jury could find that Defendant had made false representations related to the aircraft and their compliance with FAA regulations, Mr. Feliciano-Muñoz was a sophisticated buyer who had previous experience buying and owning aircraft and had been assisted in the deal by three consultants. Id. at 15. Therefore, the district court concluded no jury could find that Mr. Feliciano-Muñoz's reliance on Defendant's representations was reasonable. Id. Lastly, the district court found that Defendant's argument regarding Plaintiffs' failure to exhaust intra-corporate remedies lacked merit. Id.

On October 18, 2018, Plaintiffs appealed the district court's decision. ECF No. 102. On August 11, 2020, the United States Court of Appeals for the First Circuit affirmed in part and vacated and remanded in part the district court's decision. ECF No. 105. The First Circuit affirmed the district court's decision to grant Defendant's motion for summary judgment on the dolo claim. Id. at 17-31. However, the First Circuit found that the "district court erred in concluding that [Mr. Feliciano-Muñoz] did not assert a breach of contract claim" and remanded said claim to the district court with instructions to review it under the summary judgment standard.[1] Id. at 14-15, 31.

## II.     Standard of Review

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992) (citations omitted). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the

---

[1] The First Circuit remanded "Feliciano's breach of contract claim, which according to Feliciano was his primary theory of liability, under the summary judgment standard." ECF No. 105, at 31. No one is arguing that Air America, Inc. is a party to the SPA. It is undisputed that the transaction was between Mr. Feliciano-Muñoz and Defendant. ECF No. 42, at 3, ¶ 13; ECF No. 55, at 1, ¶ 1. Therefore, it follows that Air America, Inc. does not have standing for the breach of contract claim. To the extent that the amended complaint alleges that Air America, Inc. is a party to the transaction between Mr. Feliciano-Muñoz and Defendant, such claim is unfounded and dismissed.

movant presents a properly focused motion "averring 'an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). For issues where the nonmoving party bears the ultimate burden of proof, the party cannot merely "rely on an absence of competent evidence, but must affirmatively point to specific facts [in the record] that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995) (citation omitted). The party need not, however, "rely only on *uncontradicted* evidence . . . . So long as the [party]'s evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version of the facts is most compelling." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original) (citation omitted).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan, 904 F.2d at 115. There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood." Greenburg v. P. R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

**III.    Uncontested Material Facts[2]**

In September 2014, Air America, Inc. was a corporation organized pursuant to the General Corporations Act of Puerto Rico, which provided airline services. ECF No. 42, at 1, ¶ 1; ECF No. 56, at 1, ¶ 1. Defendant was the owner of all its shares. ECF No. 42, at 1, ¶ 2; ECF No. 56, at 1, ¶ 2.

On September 30, 2014, Mr. Feliciano-Muñoz issued a first Letter of Intent ("LOI") to Defendant, with the purpose of buying 100% of Air America, Inc.'s shares for $1,500,000. ECF No. 42, at 2, ¶ 9; ECF No. 56, at 2, ¶ 9. On October 21, 2014, Defendant sent an email in which he stated that he was not accepting the terms of the LOI. ECF No. 42, at 2-3, ¶ 10; ECF No. 42-9, at 1. On November 6, 2014, Mr. Feliciano-Muñoz issued a second LOI to Defendant with the purpose of buying 80% of Air America, Inc.'s shares for $1,300,000. ECF No. 42, at 3, ¶ 11; ECF No. 56, at 2, ¶ 11. Defendant did not sign the second LOI. Id. On November 12, 2014, Mr. Feliciano-Muñoz issued a third LOI to Defendant with the purpose of buying 80% of Air America, Inc.'s shares for $1,300,000. ECF No. 42, at 3, ¶ 12; ECF No. 56, at 2, ¶ 12. Defendant signed the third LOI. Id.

On December 17, 2014, Mr. Feliciano-Muñoz and Defendant signed a Stock Purchase Agreement ("SPA"). ECF No. 42, at 3, ¶ 13; ECF No. 56, at 2, ¶ 13. Under the SPA, Defendant would sell 80% of his shares to Mr. Feliciano-Muñoz for $1,300,000. ECF No. 42, at 3, ¶ 15; ECF No. 56, at 3, ¶ 15. Mr. Feliciano-Muñoz would thereby assume control of the operations of the company and of the Board of Directors. ECF No. 56, at 6, ¶ 1; ECF No. 56-2, at 1. The

---

[2] Proposed facts 10 and 15 are deemed admitted despite Plaintiff's denial because the denial does not contradict them. ECF No. 42, at 2-3, ¶ 10; ECF No. 56, at 2, ¶ 10; ECF No. 42, at 3, ¶ 15; ECF No. 56, at 3, ¶ 15.
The proposed facts in Plaintiff's response to the motion for summary judgment (ECF No. 56, at 6-10) are deemed admitted to the extent that they are supported by their record citations because Defendant did not reply to these facts. See Local Rule 56(e).

payment schedule for the purchase of Air America, Inc. was as follows: $100,000 was paid on November 12, 2014 as a deposit upon acceptance of the offer; $950,000 was paid on December 17, 2014 when the SPA was signed; and a final payment of $250,000 was due 12 months after the SPA was signed. ECF No. 42, at 3, ¶ 15; ECF No. 42-12, at 1-2. The SPA provided that the final payment of $250,000 would be evidenced by a non-negotiable promissory note ("the Note") for the same amount. ECF No. 42-12, at 2, ¶ B (iii). The Note was secured with a lien on Aircraft N707TL. ECF No. 42, at 4, ¶ 16; ECF No. 56, at 3, ¶ 16. The SPA also provided that any unrecorded or undisclosed expenses and liabilities ("unrecorded expenses") that were related to the operations of Air America, Inc. prior to the date of the SPA that were found by Mr. Feliciano-Muñoz after the date of the SPA, shall be paid by Defendant to Air America, Inc. ECF No. 56, at 7, ¶ 3; ECF No. 56-1, at 2, Art. 1, Sec. C (ii). Additionally, the SPA provided that

> All expenses incurred by [Air America, Inc.] prior to the date hereof shall run on the account of the [Defendant]; and all expenses incurred by [Air America, Inc.] after the date hereof will run on the account of [Air America, Inc.]. In addition, any expenses incurred by [Air America, Inc.] after the date hereof that should have been incurred by [Air America, Inc.] prior to this date, will be on the account of the [Defendant] and shall be considered unrecorded expenses.

Id. In the event that Defendant failed to reimburse Air America, Inc., in addition to any rights available at law to collect the unrecorded expenses, Mr. Feliciano-Muñoz had the right to deduct or set-off the unrecorded expenses from the face value of the Note. Id.

The SPA contained a clause under Defendant's representations and warranties section that stated that the licenses of Air America, Inc. were in full force and effect, that no violations have been or were expected to be recorded, and that the business was being operated in compliance with such licenses. ECF No. 42, at 4, ¶ 18; ECF No. 56, at 3, ¶ 18. The SPA also stated that Defendant agreed to indemnify Mr. Feliciano-Muñoz for all losses, claims, causes of action, obligations, suits, costs, damages, expenses, and liabilities which Mr. Feliciano-Muñoz

"may suffer or incur or be compelled to or be subject to and which are caused by or arise directly or indirectly by reason of the breach of any representations and warranties of [Defendant] contained herein." ECF No. 56, at 7, ¶ 3; ECF No. 56-1, at 8, Art. IV, Sec. A.

Mr. Feliciano-Muñoz evaluated Air America, Inc.'s financial records and aircraft flight and maintenance logbooks, from which it appeared that as of December 17, 2014, Air America, Inc. was operating in compliance with FAA regulations and that its aircrafts were in excellent condition. ECF No. 42, at 8, ¶ 48; ECF No. 56, at 5-7, ¶¶ 2, 48. There were no entries in the flight and maintenance records of the aircrafts that would ground any of them, other than scheduled inspections or routine maintenance. ECF No. 42, at 8, ¶ 49; ECF No. 56, at 5, ¶ 49.

Regarding the condition of the aircrafts, first, Aircraft N707TL flight and maintenance records reflect that after December 17, 2014, the aircraft flew without any discrepancies being noted until December 28, 2014, when a generator warning light illuminated, which was corrected the same day. ECF No. 42, at 7, ¶ 39; ECF No. 56, at 4, ¶ 39. Second, Aircraft N21WW flight and maintenance records reflect that the aircraft flew without any discrepancies being noted from December 17, 2014 to January 7, 2015, when a light in the cockpit was noted as inoperative. ECF No. 42, at 7, ¶ 40; ECF No. 56, at 4, ¶ 40. Third, Aircraft N62749 flight and maintenance records reflect that after December 17, 2014, the aircraft flew without any discrepancies being noted until January 4, 2015, when a scheduled maintenance was performed. ECF No. 42, at 7, ¶ 43; ECF No. 56, at 4, ¶ 43. Fourth, Aircraft N2395Z was flying from December 17, 2014 to January 8, 2015, when a discrepancy regarding the cabin door was noted. ECF No. 42, at 7, ¶ 44; ECF No. 56, at 4, ¶ 44. Fifth, Aircraft N7049T flight and maintenance records reflect that after December 17, 2014, the aircraft flew until December 29, 2014, when a magnet was noted as inoperative. ECF No. 42, at 7, ¶ 45; ECF No. 56, at 4, ¶ 45. The aircraft continued to fly from

December 29, 2014 until February 10, 2015, when the right generator light reflected an over voltage. ECF No. 42, at 8, ¶ 46; ECF No. 56, at 5, ¶ 46. Sixth, the status of the propeller on Aircraft N30PT appeared on a spreadsheet which was sent to Mr. Verlyn Wolfe ("Mr. Wolfe"), an aviation consultant that assisted Mr. Feliciano-Muñoz with the purchase. ECF No. 42, at 2, ¶¶ 7-8, at 6, ¶ 38; ECF No. 56, at 1, ¶¶ 7-8, at 4, ¶ 38.

Mr. Feliciano-Muñoz claims that by December 23, 2014, he had discovered that the aircrafts had maintenance and repair issues that placed Air America, Inc's licenses and permits at risk, which were not recorded on the logbooks. ECF No. 56, at 7-8, ¶¶ 5, 8; ECF No. 56-2, at 2, ¶ 5. Thus, Air America, Inc. paid for repairs, purchased new equipment, and incurred additional expenses such as the cost of chartering flights. Id.

Around one year later, on November 16, 2015, Mr. Feliciano-Muñoz sent a letter to Defendant, informing him that he was "exercising his right to set off an indemnity claim" against Defendant in the amount of $250,000 and requesting an additional amount of $25,395.46. ECF No. 42, at 5, ¶ 26; ECF No. 56, at 3, ¶ 26. In the letter, Mr. Feliciano-Muñoz stated that upon taking control of Air America, Inc. that he discovered "key equipment on the six aircrafts were broken or inoperative" which required the aircraft to be grounded and repaired. Id. On November 24, 2015, Defendant replied that Mr. Feliciano-Muñoz had to pay him the $250,000 that he was owed. ECF No. 42, at 5, ¶ 27; ECF No. 56, at 4, ¶ 27. On December 2, 2015, Mr. Feliciano-Muñoz replied that he would pay the $250,000 in exchange for the release of the lien on Aircraft N707TL. ECF No. 42, at 5, ¶ 32; ECF No. 56, at 4, ¶ 32. On December 3, 2015, Mr. Feliciano-Muñoz paid $250,000 to Defendant. ECF No. 42, at 6, ¶ 33; ECF No. 56, at 4, ¶ 33.

**IV.     Mr. Feliciano-Muñoz's Breach of Contract Claim**

As previously stated, the First Circuit affirmed the district court's grant of summary judgment regarding the dolo claim and remanded only the breach of contract claim with instructions to review it under the summary judgment standard. ECF No. 105, at 31. Thus, the court's analysis of the pending motion for summary judgment is limited to evaluating Mr. Feliciano-Muñoz's breach of contract claim under the summary judgment standard.

**A. Air America, Inc.'s Compliance with FAA Laws and Regulations**

Defendant contends that summary judgment should be granted because Air America, Inc. was in compliance with FAA laws and regulations. "Under Puerto Rico law, a claim for breach of contract has three elements: (1) a valid contract; (2) a breach by one of the parties to the contract; and (3) resulting damages." Yacht Caribbean Corp. v. Carver Yacht LLC, 270 F. Supp. 3d 547, 555 (D.P.R. 2017). "Puerto Rico law makes clear that contracts shall be binding, regardless of the form in which they were executed, 'provided the essential conditions required for their validity exist.'" Markel American Ins. Co. v. Diaz-Santiago, 674 F.3d 21, 31 (1st Cir. 2012) (citing 31 L.P.R.A. § 3451).

> Where the terms of a contract are clear, leaving no doubt as to the contracting parties' intentions, such contract will be observed according to "the literal sense of its stipulations." It is widely accepted that "[o]bligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations."

Id. (citing 31 L.P.R.A. §§ 3471, 2994).

"The Puerto Rico Supreme Court has held that '[w]hen the breach of a contractual obligation causes harm to any of the contracting parties, an action for damages for breach of contract lies.'" Redondo Const., Co. v. Izquierdo, 929 F. Supp. 2d 1, 12 (D.P.R. 2012) (quoting Soc. de Gananciales v. Vélez & Asoc., 98 P.R. Offic. Trans. 54 (P.R. 1998)); Markel American

9

Ins. Co., 674 F.3d at 31 ("Where a party fails to uphold or abide by the contract's essential obligations, such failure will be deemed a breach of the contract."). "When a party breaches a contract, it 'is liable to the aggrieved party for damages which were foreseen or may have been foreseen.'" Redondo Const., Co., 929 F. Supp. 2d at 12 (quoting Oriental Fin. Group, Inc. v. Fed. Ins. Co., 483 F. Supp. 2d 161, 165 (D.P.R. 2007)).

It is not disputed by either party that the SPA constituted a valid contract between Defendant and Mr. Feliciano-Muñoz. ECF No. 42, at 3, ¶ 13; ECF No. 55, at 1, ¶ 1. See Citibank Global Markets, Inc. v. Rodríguez Santana, 573 F.3d 17, 24 (1st Cir. 2009) ("Under Puerto Rico law, a contract has three elements: consent, a definitive (and legal) object, and consideration." (citing 31 L.P.R.A. § 3391)). Defendant, however, argues that there was no breach of contract because Air America, Inc. was in compliance with FAA laws and regulations at the time of the SPA. Defendant relies on the condition of the aircrafts to assert that they did not have maintenance and repair issues at the time the SPA was executed on December 17, 2014. ECF No. 41, at 12. A generator warning light in Aircraft N707TL illuminated on December 28, 2014 (ECF Nos. 42, at 7, ¶ 39; ECF No. 56, at 4, ¶ 39); a light in the cockpit of Aircraft N21WW was noted as inoperative on January 7, 2015 (ECF No. 42, at 7, ¶ 40; ECF No. 56, at 4, ¶ 40); a discrepancy regarding the cabin door of Aircraft N2395Z was noted on January 8, 2015 (ECF No. 42, at 7, ¶ 44; ECF No. 56, at 4, ¶ 44); a magnet in Aircraft N7049T was noted as inoperative on December 29, 2014 (ECF No. 42, at 7, ¶ 45; ECF No. 56, at 4, ¶ 45); and the right generator light of Aircraft N7049T reflected an over voltage on February 10, 2015 (ECF No. 42, at 8, ¶ 46; ECF No. 56, at 5, ¶ 46). These facts do not appear to be consistent with Plaintiff's claim that Mr. Feliciano-Muñoz discovered that aircrafts N707TL, N21WW, N2395Z, and

N7049T had maintenance and repair issues by December 23, 2014, shortly after the purchase.[3] ECF No. 55, at 2; ECF No. 56, at 7-8, ¶ 5.

Plaintiff, on the other hand, proffers the opinions and findings of his expert in airplane operations, Mr. Luis Irizarry ("Mr. Irizarry"). Mr. Irizarry concluded that there were no entries in the logbooks of any discrepancies or maintenance issues for a long time, which indicates that no entries of necessary mechanical repairs were made in order to conceal the fact that the aircraft were not in airworthy condition to prevent their grounding. ECF No. 56, at 10, ¶ 13; ECF No. 56-3, at 17. Given that on summary judgment, all reasonable inferences must be drawn in favor of the nonmoving party, it is hereby concluded that a reasonable jury could find that aircrafts N707TL, N21WW, N2395Z, N7049T, and N62749 had maintenance and repair issues that arose before the signing of the SPA, and thus, that Air America, Inc. was not in compliance with FAA laws and regulations prior to the signing of the SPA. Whether Mr. Feliciano- Muñoz was well aware of the dearth of entries in the maintenance logs prior to the execution of the SPA and what impact, if any, such awareness has on his breach of contract claim is for the jury to decide.

Defendant also argues that the status of the propeller on Aircraft N30PT appeared on a spreadsheet which was sent to Mr. Wolfe. ECF No. 42, at 6, ¶ 38; ECF No. 56, at 4, ¶ 38. Further, around the time of the SPA, Mr. Feliciano-Muñoz took two photographs of Aircraft N30PT, which reflect that the aircraft lacked avionic equipment and passenger seats. ECF No. 41, at 4-5; ECF No. 42, at 4, ¶¶ 19, 20; ECF No. 56, at 3, ¶¶ 19, 20. Mr. Feliciano-Muñoz, however, has not alleged that Aircraft N30PT was only deficient due to the status of the propeller on Aircraft N30PT, as well as the aircraft's lack of avionic equipment and passenger seats. See

---

[3] Aircraft N62749's flight and maintenance records reflect that after December 17, 2014, the aircraft flew without any discrepancies being noted until January 4, 2015, when a scheduled maintenance was performed. ECF No. 42, at 7, ¶ 43; ECF No. 56, at 4, ¶ 43. This fact also contradicts Plaintiff's claim that Mr. Feliciano-Muñoz discovered the aircrafts' maintenance and repair issues by December 23, 2014.

ECF No. 56-3, at 13. Thus, once again, a reasonable jury could find that Aircraft N30PT had other undisclosed maintenance and repair issues that arose before the signing of the SPA.

### B. Whether Mr. Feliciano-Muñoz bought Air America, Inc. "as is"

Defendant proceeds to argue that Mr. Feliciano-Muñoz bought Air America, Inc. "as is." ECF No. 41, at 12. This constitutes a disputed fact. On one hand, the second LOI was not signed because it contained terms such as "offer subject to" or "satisfaction to buyer." ECF No. 42, at 2-3, ¶¶ 10, 11. There were no references in the third LOI to conditions such as "offer subject to" or "satisfaction to buyer." ECF No. 42, at 3, ¶ 12; ECF No. 56, at 2, ¶ 11. There are also no references in the SPA to conditions such as "offer subject to" or "satisfaction to buyer."

On the other hand, the SPA also does not include language that the aircraft were sold "as is." Moreover, Mr. Feliciano- Muñoz argues that the SPA contained specific language to protect him stating that "any expenses incurred by [Air America, Inc.] after the date hereof that should have been incurred by [Air America, Inc.] prior to this date, will be on the account of the [Defendant] and shall be considered Unrecorded Expenses." ECF No. 56, at 7, ¶ 3; ECF No. 56-1, at 2, Art. 1, Sec. C (ii). Thus, a jury could find that Air America, Inc. was not sold "as is."

### C. Whether Mr. Feliciano-Muñoz's $250,000 Payment Constituted an Accord and Satisfaction

Defendant contends that Mr. Feliciano-Muñoz's $250,000 payment to him on December 3, 2015 constituted an accord and satisfaction that resolved all controversies between them. ECF No. 41, at 21. "Discharge by accord and satisfaction occurs upon the rendering of some performance different from that which was claimed as due and the acceptance of such substitute performance by the claimant as full satisfaction of the claim." Alvarez Díaz v. Air France, 787 F. Supp. 258, 260 (D.P.R. 1991). "In order for this doctrine to apply, the following requisites must be present: '(1) a claim which is unliquidated or concerning which a bona fide controversy

exists; (2) an offer of payment by the debtor; and (3) an acceptance of the offer of payment by the creditor.'" Gastronomical Workers Union Local 601 v. Posadas de Puerto Rico Assocs., 544 F. Supp. 2d 89, 94 (D.P.R. 2008) (quoting H.R. Elec., Inc. v. Rodríguez, 114 D.P.R. 236, 240 (1983)); Corujo v. Eurobank, Civ. No. 4-2239, 2008 WL 11501529, at *6 (D.P.R. June 9, 2008). "The payment offer must be accompanied by acts or declarations which clearly denote that the offer made represents full, complete, and final payment of the existing debt. Similarly, the creditor's conduct must undoubtedly indicate that he has accepted the offer." Gastronomical Workers, 544 F. Supp. 2d at 94 (quoting H.R. Elec., 114 D.P.R. at 242).

In his motion for summary judgment, Defendant alleges that Mr. Feliciano-Muñoz's $250,000 payment to him constituted an accord and satisfaction because it is

> obvious that if [Mr. Feliciano-Muñoz] had thought [Defendant] owed any amount of money, instead of paying, would rather had retained the $250,000 or as permitted by the law, deposit in consignment said amount in court. Once the amount was paid in full without making any reserve of rights or disclaimer, the controversies between the parties were resolved by accord and satisfaction, making the complaint a frivolous one.

ECF No. 41, at 21. Plaintiff denies that the $250,000 payment constituted an accord and satisfaction, and asserts that he never waived his rights under the SPA. ECF No. 56, at 10, ¶ 12.

The elements of accord and satisfaction are not present in the case at hand. First, the $250,000 payment from Mr. Feliciano-Muñoz to Defendant did not constitute substitute performance because it was specifically provided for in the SPA's payment schedule. See Alvarez Diaz, 787 F. Supp. at 260. ECF No. 42, at 3, ¶ 15; ECF No. 42-12, at 1-2. While a bona fide controversy exists as to whether Defendant is obligated for the payment of alleged unrecorded expenses of $275,395.46, Defendant has not proffered any declaration by Mr. Feliciano-Muñoz indicating that he released his claims to the payment of unrecorded expenses. Nor has Defendant cited to any evidence that Mr. Feliciano-Muñoz was required by

13

the SPA to issue a disclaimer or reserve his rights to collect unrecorded expenses if he did not set-off unrecorded expenses from the Note. The mere fact that the SPA provided Mr. Feliciano-Muñoz the option to set-off any unrecorded expenses from the Note does not mean that he was compelled to do so. Furthermore, the SPA specifically provides that Mr. Feliciano-Muñoz has any rights available at law to collect unrecorded expenses.[4] Thus, Defendant's claim that Mr. Feliciano-Muñoz's $250,000 payment constituted an accord and satisfaction that resolved all controversies between them is without merit.

**V.     Conclusion**

For the foregoing reasons, Defendant's request that summary judgment be entered as to the breach of contract claim is DENIED. To the extent that the amended complaint alleges that Air America, Inc. is a party to the transaction between Defendant and Mr. Feliciano- Muñoz, said claim is unfounded and Air America, Inc. does not have standing for the breach of contract claim. Thus, the breach of contract claim by Air America, Inc. is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 13th day of November, 2020.

s/Marcos E. López<br>U.S. Magistrate Judge

---

[4] The SPA provides that "If [Defendant] fails to reimburse [Air America, Inc.], in addition to any rights available at law to collect the Unrecorded Expenses, [Mr. Feliciano-Muñoz] shall have the right to deduct or set-off the Unrecorded Expenses from face value of the Note." ECF No. 56-1, at 2, Art. 1(C).