# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LUIS FELICIANO-MUÑOZ AND AIR AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> FRED REBARBER-OCASIO, <br><br> Defendant. | CIVIL NO.: 16-2719 (MEL) |

## OPINION AND ORDER

### I.  Procedural Background

On April 28, 2017, Mr. Luis Feliciano-Muñoz ("Mr. Feliciano-Muñoz") and Air America, Inc. (collectively "Plaintiffs") filed an amended complaint against Mr. Fred Rebarber-Ocasio ("Defendant" or "Mr. Rebarber-Ocasio"). ECF No. 16. Plaintiffs alleged a "breach of contract arising from the false representations and warranties of the Defendant regarding [Air America, Inc.]'s compliance with applicable [Federal Aviation Administration] law and regulations." Id. at 6. On January 16, 2018, Defendant filed a motion for summary judgment arguing that Air America, Inc. was operating in compliance with Federal Aviation Administration ("FAA") regulations. ECF No. 40.

On September 28, 2018, the court issued an opinion and order granting Defendant's motion for summary judgment. ECF No. 99. The court found that Mr. Feliciano-Muñoz's allegations in the amended complaint were "elusive," and determined that "while Plaintiffs have spoken the language of breach of contract, what Plaintiffs are in essence alleging is a claim of deceit, known as 'dolo' under Puerto Rico contract law." Id. at 8. The court dismissed the breach of contract claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim to

relief that is plausible on its face. Id. at 11. Next, the court proceeded to apply the test for deceit in the formation of the contract under the summary judgment standard. The court found that while a reasonable jury could find that Defendant had made false representations related to the aircraft and their compliance with FAA regulations, Mr. Feliciano-Muñoz was a sophisticated buyer who had previous experience buying and owning aircraft and had been assisted in the deal by three consultants. Id. at 15. Therefore, the court concluded no jury could find that Mr. Feliciano-Muñoz's reliance on Defendant's representations was reasonable. Id.

On October 18, 2018, Plaintiffs appealed the district court's decision. ECF No. 102. On August 11, 2020, the United States Court of Appeals for the First Circuit affirmed in part and vacated and remanded in part the district court's decision. ECF No. 105. The First Circuit affirmed the district court's decision to grant Defendant's motion for summary judgment on the dolo claim. Id. at 17-31. However, the First Circuit found that the "district court erred in concluding that [Mr. Feliciano-Muñoz] did not assert a breach of contract claim" and remanded said claim to the district court with instructions to review it under the summary judgment standard. Id. at 14-15, 31.

On November 13, 2020, an opinion and order was issued denying Defendant's request that summary judgment be entered as to the breach of contract claim. ECF No. 111. Pending before the court is Defendant's motion for reconsideration of the court's opinion and order denying his request that summary judgment be entered as to the breach of contract claim. ECF No. 133. On February 19, 2021, Mr. Feliciano-Muñoz filed a response in opposition. ECF No. 139.

**II.     Legal Standard**

"The Federal Rules of Civil Procedure do not specifically provide for the filing of motions for reconsideration of interlocutory orders." Vega v. Hernández, 381 F. Supp. 2d 31, 35 (D.P.R. 2005). "Notwithstanding, any motion seeking the reconsideration of a judgment or order is considered as a motion to alter or amend a judgment under Fed.R.Civ.P. 59(e), if it seeks to change the order or judgment issued."[1] González-Camacho v. Banco Popular de Puerto Rico, 318 F. Supp. 3d 461, 511 (D.P.R. 2018) (citations omitted); Vega, 381 F. Supp. 2d at 35 ("A motion for reconsideration of an order to grant [or deny] summary judgment is treated as a motion under Rule 59(e) of the Federal Rules of Civil Procedure").

Motions for reconsideration "are entertained by courts if they seek to correct manifest errors of law, present newly discovered evidence, or when there is an intervening change in law." Pineiro v. Oriental Group, 734 F. Supp. 2d 239, 241 (D.P.R. 2010) (citing Prescott v. Higgins, 538 F.3d 32, 45 (1st Cir. 2008)). "Moreover, Rule 59(e) motions cannot be used 'to raise arguments which could have been raised prior to the issuance of the judgment [or order].'" Vega, 381 F. Supp. 2d at 35 (citing Pacific Ins. Co. v. Am. Nat'l. Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998)). "Neither are Rule 59(e) motions appropriate 'to repeat old arguments previously considered and rejected.'" Trabal Hernández v. Sealand Servs., Inc., 230 F. Supp. 2d 258, 259 (D.P.R. 2002) (quoting Nat'l Metal Finishing Co. v. BarclaysAmerican/Commercial, Inc., 899 F.2d 119, 123 (1st Cir. 1990)). "Hence, motions for reconsideration are 'extraordinary remedies which should be used sparingly' and are 'typically denied.'" Vega, 381 F. Supp. 2d at 35 (citations omitted).

---

[1] Federal Rule of Civil Procedure 59(e) provides "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."

3

**III.     Legal Analysis**

Defendant raises several arguments in his motion for reconsideration and requests that summary judgment be entered in his favor. ECF No. 133.

### A. Whether Air America, Inc. was in compliance with Federal Aviation Administration ("FAA") regulations

Defendant argues that summary judgment should be granted in his favor because Air America, Inc. was in compliance with FAA regulations at the time of the Stock Purchase Agreement ("SPA"). Defendant takes issue with the opinions and findings of Mr. Feliciano-Muñoz's expert in airplane operations, Mr. Luis Irizarry ("Mr. Irizarry"). Mr. Irizarry concluded that there were no entries in the logbooks of any discrepancies or maintenance issues for a long time, which indicates that no entries of necessary mechanical repairs were made in order to conceal the fact that the aircraft were not in airworthy condition to prevent their grounding. ECF No. 56, at 10, ¶ 13; ECF No. 56-3, at 17. Defendant alleges that Mr. Irizarry's "conclusion of the occurrence of deceitful conduct is not only speculative, but points to elements of the deceit ('dolo') cause of action that was already adjudicated, and not to the elements of a breach of contract." ECF No. 133, at 5.

Defendant's argument that Mr. Irizarry's conclusions regarding the lack of entries in the maintenance logbooks are relevant to Mr. Feliciano-Muñoz's dismissed dolo claim has merit. However, Mr. Irizarry's conclusions are also relevant to the breach of contract claim. The SPA provides that

> Any unrecorded or undisclosed expenses and liabilities related with the operations of [Air America, Inc.] prior to this date (the "Unrecorded Expenses") found by [Mr. Feliciano-Muñoz] after the date hereof, shall be paid by [Mr. Rebarber-Ocasio] to [Air America, Inc.] upon claim thereof by [Mr. Feliciano-Muñoz] or by [Air America, Inc.] supported by adequate evidence. If [Mr. Rebarber-Ocasio] fails to reimburse [Air America, Inc.], in addition to any rights available at law to collect

4

> the Unrecorded Expenses, [Mr. Feliciano-Muñoz] shall have the right to deduct or set-off the Unrecorded Expenses from the face value of the Note.

ECF No. 42-12, at 2, Art. 1, Sec. C(ii). Therefore, Air America, Inc. would be entitled to the payment of the amount of unrecorded expenses from Defendant under a breach of contract theory if the aircraft had undisclosed maintenance and repair issues before the signing of the SPA. Mr. Irizarry's conclusions dispute Defendant's assertion that Air America, Inc. was in full compliance with FAA regulations and there were no undisclosed maintenance and repair issues at the time of the SPA. Defendant may vigorously cross-examine Mr. Irizarry at trial and the jury would decide how much credibility to lend to Mr. Irizarry's testimony.

Defendant further alleges that even assuming that maintenance issues were not entered into the logbooks, "[i]t does not necessarily entail a breach of a contractual obligation, especially when [Defendant] did not guarantee the condition of the airplanes owned by Air America, Inc. nor did he affirm at any point that the aircraft would not break down or require maintenance." ECF No. 333, at 5. Defendant's argument relies on the faulty premise that the breach of contract claim arises from guarantees made by Defendant that the aircraft would not break down and not require maintenance. Instead, Mr. Feliciano-Muñoz's breach of contract claim is grounded in the provisions of the SPA. See ECF No. 16, at 3, 5-7. As stated in the opinion and order issued on November 11, 2020, "[w]hether Mr. Feliciano-Muñoz was well aware of the dearth of entries in the maintenance logs prior to the execution of the SPA and what impact, if any, such awareness has on his breach of contract claim is for the jury to decide." ECF No. 111, at 11.

### B. Whether Air America, Inc. was sold "as is"

Next, Defendant claims that Air America, Inc. was sold "as is." ECF No. 133, at 6-8. Defendant argues that while language conditioning the purchase to the satisfaction of buyer originally appeared in the first two letters of intent, the fact that it was removed from the third

5

letter of intent and does not appear in the SPA is an indication that it was an "as is" sale. Id. at 7. Defendant also argues that no guarantees were made as to the condition of the aircraft or that the aircraft would not break down following the SPA finalization. Id. at 8.

In determining whether Air America, Inc. was sold "as is," the court already evaluated these arguments in resolving the motion for summary judgment on the breach of contract claim. See ECF No. 111, at 12; Villanueva-Mendez v. Nieves Vázquez, 360 F. Supp. 2d 320, 324 (D.P.R. 2005) (explaining that a motion for reconsideration "may not be used by the losing party to repeat old arguments previously considered and rejected . . ."). The SPA provided that "any expenses incurred by [Air America, Inc.] after the date hereof that should have been incurred by [Air America, Inc.] prior to this date, will be on the account of the [Defendant] and shall be considered Unrecorded Expenses." ECF No. 42-12, at 2, Art. 1, Sec. C (ii). This SPA provision supports Mr. Feliciano-Muñoz's assertion that Air America, Inc. was not sold "as is."

Defendant also argues that Air America, Inc. was sold "as is" because the object of the SPA was shares of a corporation and that the "agreement did not constitute a sale of airplanes or other equipment, nor to their condition, but rather of a percentage of shares in the referred corporation." ECF No. 133, at 7. Defendant's argument is undermined by the SPA provision that provides for Defendant's payment of unrecorded expenses and his representation in the SPA that Air America, Inc. was in full compliance with all its licenses. See ECF No. 42-12, at 2, Art. 1, Sec. C(ii); ECF No. 42-12, at 5, Art. II, Sec. D.

It is also argued by Defendant that Air America, Inc. was sold "as is" because Mr. Feliciano-Muñoz "has not once brought up any issues with any other equipment that was owned by [Air America, Inc.] at the time of signing the SPA. For example, any motor vehicles, 2 golf carts or large office equipment, which would fall under the same argument umbrella he has

6

brought forth before this Honorable Court." ECF No. 133, at 7. Defendant's contention is not viable as it does not follow that Air America, Inc. was sold "as is" because the amended complaint did not include allegations regarding the condition of golf carts and office equipment.

### C. Mr. Feliciano-Muñoz's Consultants

It is also argued by Defendant that Mr. Feliciano-Muñoz ignored advice from his consultants and proceeded to sign the SPA without insisting on an inspection of the aircraft. ECF No. 133, at 9. Mr. Feliciano-Muñoz contends that Defendant "merely states that Plaintiff Feliciano 'threw caution to the wind' and ignored advice from one of his consultants prior to the SPA, but makes no particular argument." ECF No. 139, at 4.

Mr. Feliciano-Muñoz's hiring of consultants is relevant to the dismissed dolo claim. A dolo claim requires a party alleging fraud to demonstrate: "(1) a false representation by the defendant; (2) the plaintiff's reasonable and foreseeable reliance thereon; (3) injury to the plaintiff as a result of the reliance; and (4) an intent to defraud." Portugués-Santa v. Rekomdiv Int'l, 657 F.3d 56, 62 (1st Cir. 2011). Thus, the hiring of consultants is relevant as to whether the reliance on the false representation was reasonable. However, Mr. Feliciano-Muñoz's hiring of consultants and failure to request an inspection of the aircraft before signing the SPA is not dispositive of the question of whether Defendant breached the terms of the SPA.

### D. Corporate Resolution from Air America, Inc.

Defendant also argues that the breach of contract claim is moot in light of a Corporate Resolution that was issued by Air America, Inc. ECF No. 133, at 9-11. Defendant alleges that "[o]n March 20, 2018, Air America, Inc. issued a Corporate Resolution, signed by [Mr. Feliciano-Muñoz], in which it was certified that Yellow Media (a corporation solely owned

7

by [Mr. Feliciano-Muñoz]) had lent money and assumed business expenses for Air America, Inc." ECF No. 133, at 9; ECF No. 133-2. The Corporate Resolution states:

> That Yellow Media has lent money and assumed business expenses of Air America since 2014. As of March 20th, 2018 Air America has more than $500,000 in debt to Yellow Media and [Mr. Feliciano-Muñoz]. In order to secure the payment and satisfy the debt, Air America has transferred the aircraft title and registration of four aircraft to Yellow Media Group, Inc. The aircraft registration numbers transferred are N62749, N30PT, N2395Z and N7049T. With this aircraft transfer Yellow Media is satisfied and Air America has no outstanding debt with Yellow Media.[2]

ECF No. 133-2.

Defendant argues that "it is clear that Air America, Inc. no longer has an outstanding debt with the party that provided the funds: Yellow Media, and consequently, [Mr. Feliciano-Muñoz]." ECF No. 133, at 11. Defendant proceeds to argue that "given the non-existence of this debt in light of the Corporate Resolution, the issue of whether there is money owed to [Mr. Feliciano-Muñoz] as a result of expenses incurred by Air America, Inc. for which he provided money and which, by [Mr. Feliciano-Muñoz's] allegations, should have been provided by [Defendant], is now moot." Id. Mr. Feliciano-Muñoz, on the other hand, contends that Air America Inc.'s Corporate Resolution from March 20, 2018 only shows that Air America, Inc. satisfied its debt to Yellow Media. ECF No. 139, at 5.

Defendant's contention that Mr. Feliciano-Muñoz's breach of contract claim is moot is unavailing. The Corporate Resolution specifically states that "[w]ith this aircraft transfer Yellow Media is satisfied and Air America has no outstanding debt with Yellow Media." ECF No. 133-2. Therefore, the only inference that follows is that Air America, Inc.'s debt with Yellow Media was satisfied on March 20, 2018. The mere fact that Air America, Inc. is no longer indebted to

---

[2] Defendant clarifies that "[t]his Corporate resolution was not part of the discovery process in this case, but rather, it was provided to Defendant in a parallel case as part of the discovery process there, hence why it is being put forth in this case at this time." ECF No. 133, at 9.

Yellow Media does not necessarily mean that Defendant is no longer liable under breach of contract to Air America, Inc. and Mr. Feliciano-Muñoz.

### E. Whether Mr. Feliciano-Muñoz has standing to claim unrecorded expenses

Defendant argues that Mr. Feliciano-Muñoz does not have standing to claim the recovery of unrecorded expenses. ECF No. 133, at 11. The SPA provides that

> Any unrecorded or undisclosed expenses and liabilities related with the operations of [Air America, Inc.] prior to this date (the "Unrecorded Expenses") found by [Mr. Feliciano-Muñoz] after the date hereof, shall be paid by [Mr. Rebarber-Ocasio] to [Air America, Inc.] upon claim thereof by [Mr. Feliciano-Muñoz] or by [Air America, Inc.] supported by adequate evidence. If [Mr. Rebarber-Ocasio] fails to reimburse [Air America, Inc.], in addition to any rights available at law to collect the Unrecorded Expenses, [Mr. Feliciano-Muñoz] shall have the right to deduct or set-off the Unrecorded Expenses from the face value of the Note.

ECF No. 42-12, at 2, Art. 1, Sec. C(ii). Thus, Defendant claims that because unrecorded expenses would be paid to Air America, Inc., Mr. Feliciano-Muñoz "does not have standing to claim a debt in his favor against [Defendant] for businesses expenses of Air America, Inc., following the signature of the SPA up to March 20, 2018."[3] ECF No. 133, at 12.

Although indeed the SPA provides that unrecorded expenses must be paid to Air America, Inc., it also indicates that said expenses are to be paid to Air America, Inc., "upon claim thereof of by [Mr. Feliciano-Muñoz] or by [Air America, Inc.] supported by adequate evidence." ECF No. 42-12, at 2, Art. 1, Sec. C(ii). The SPA also provides that Mr. Feliciano-Muñoz has "any rights available at law to collect the Unrecorded Expenses." Id. Additionally, according to Article IV, Section A of the SPA,

> [Defendant] agrees to indemnify and save and hold harmless [Mr. Feliciano-Muñoz] from and against all losses, claims, causes of action, obligations, suits, costs, damages, expenses (including, without limitation, reasonable attorney's fees

---

[3] Defendant concedes that "Air America, Inc. would, for the sake of argument have standing to claim such expenses (if it were to be found that there were, in fact, any undisclosed expenses) in a separate case, but not in this one." ECF No. 133, at 12-13.

9

> and disbursements) and liabilities which [Mr. Feliciano-Muñoz] . . . may suffer or incur or be compelled to or be subject to and which are caused by or arise directly or indirectly by reason of the breach of any representations and warranties of [Defendant] contained herein.

ECF No. 42-12, at 8, Art. IV, Sec. A. Thus, the SPA contains provisions for Mr. Feliciano-Muñoz to file a claim against Defendant for unrecorded expenses.

Even assuming arguendo that Mr. Feliciano-Muñoz does not have standing for the unrecorded expenses, Mr. Feliciano-Muñoz also alleged in the amended complaint that Defendant breached a provision of the SPA pertaining to FAA licenses. ECF No. 16, at 2-3. In Article II, Section D of the SPA, Defendant represented that

> [Air America, Inc.] has all operating authority, licenses, franchises, permits, certificates, consents, rights and privileges (collectively "Licenses") as are necessary or appropriate to the operation of its business as now conducted and as proposed to be conducted and which the failure to possess would have a material adverse effect on the assets, operations or financial condition of [Air America, Inc.] Such Licenses are in full force and effect, no violations have been or are expected to have been recorded in respect of any such Licenses, and no proceeding is pending that could result in the revocation or limitation of any such Licenses. [Air America, Inc.] has conducted its business so as to comply in all material respects with all such Licenses.

ECF No. 42-12, at 5, Art. II, Sec. D. Therefore, Mr. Feliciano-Muñoz has standing for a breach of contract claim for the payment of expenses that were incurred as a result of the alleged undisclosed maintenance and repair issues with the aircraft that put Air America, Inc.'s compliance with all of its licenses at risk.

### F. Whether Mr. Feliciano-Muñoz's breach of contract claim exceeds $75,000

Lastly, Defendant argues Mr. Feliciano-Muñoz's breach of contract claim does not exceed the $75,000 threshold for federal diversity jurisdiction. ECF No. 133, at 13-15. "Federal courts are courts of limited jurisdiction." Flores v. Wyndham Grand Resort, 873 F. Supp. 2d 444, 448 (D.P.R. 2012). "To invoke federal diversity jurisdiction, the controversy must be between

citizens of different states and involve a sum greater than $75,000." Rivera v. González, Civ. No. 15-2080, 2017 WL 1247875, at *3 n.2 (D.P.R. Mar. 31, 2017) (citing 28 U.S.C. § 1332(a)(1)). "Diversity must be complete- 'the presence of but one nondiverse party divests the district court of original jurisdiction over the entire action.'" White v. Máximo Solar Indus., Civ. No. 18-1913, 2020 WL 698720, at *2 (D.P.R. Feb. 11, 2020) (citing In re Olympic Mills Corp., 477 F.3d 1, 6 (1st Cir. 2007)).

In the amended complaint, federal diversity jurisdiction was invoked pursuant to 28 U.S.C. § 1332(a)(1). ECF No. 16, at 2. Defendant argues that the breach of contract claim cannot exceed the jurisdictional amount of $75,000 due to an indemnification limitation provision in the SPA. ECF No. 133, at 13. Pursuant to Article IV, Section C of the SPA:

> Notwithstanding in this Article IV to the contrary, [Mr. Rebarber-Ocasio's] indemnity obligations hereunder shall be limited as follows: (i) [Mr. Feliciano-Muñoz] shall not be entitled to assert any right to indemnification for any false or incorrect representations under Sections H and I of Article II hereof until the aggregate amount of all claims of [Mr. Feliciano-Muñoz] under those provisions exceeds ten thousand dollars ($10,000) (the "Deductible Amount"), and then only to the extent such claims in the aggregate exceed the Deductible Amount; and (ii) Purchase liability under the above cited provisions shall be limited in the aggregate to eighty thousand dollars ($80,000).

ECF No. 42-12, at 9, Art. IV, Sec. C. Thus, Defendant argues that the SPA limits his indemnification "for any false or incorrect representation above $10,000 to a $80,000.00 liability of [Defendant], discounting the $10,000.00. Once discounted, [Defendant's] liability amounted to only $70,000, thus defeating the $75,000 limit for a jurisdiction pursuant to 28 U.S.C. § 1332(a)(1)." ECF No. 133, at 14. Mr. Feliciano-Muñoz, on the other hand, argues that Defendant's argument is "misleading" because the indemnification clause limit of $70,000 only applies in relation to unreported taxes or contingencies as defined in Article II, Sections H and I of the SPA. ECF No. 139, at 6.

11

It is evident that Defendant's indemnity obligations are limited for false representations that arise under Article II, Sections H and I of the SPA. Article II, Section H includes a representation from Defendant regarding taxes:

> Taxes. [Air America, Inc.] has filed all federal, state, Commonwealth of Puerto Rico, municipal and other tax returns required to be filed, and all taxes, assessments and other governmental charges due from [Air America, Inc.] has been fully paid. [Air America, Inc.] has all the necessary records to support the deductions taken in its income tax returns filed for the years 2013, 2012, 2011, 2010 and 2009. [Air America, Inc.] has paid the Puerto Rico sales and use tax on parts and equipment introduced to Puerto Rico forming part of its inventory.

ECF No. 42-12, at 6, Art. II, Sec. H. Meanwhile, Article II, Section I includes the following representation from Defendant: "No material unrecorded debt, contingencies or accrued expenses. [Air America, Inc.] has no material unrecorded or unreported liabilities or contingencies." ECF No. 42-12, at 6, Art. II, Sec. I.

Defendant's argument that Mr. Feliciano-Muñoz's breach of contract claim cannot surpass the $75,000 threshold for federal diversity jurisdiction is not sustainable. The indemnification limitation provision in the SPA only applies to false representations under Article II, Sections H and I of the SPA. ECF No. 42-12, at 9, Art. IV, Sec. C. The amended complaint does not include allegations that Defendant made false representations regarding matters pertaining to Article II, Sections H and I of the SPA. Instead, the amended complaint specifically alleges that the breach of contract claim against Defendant arises from Article I, Section C(ii) and Article II, Section D of the SPA. ECF No. 16, at 2-3, 5-6; ECF No. 42-12, at 2, Art. 1, Sec. C(ii); ECF No. 42-12, at 5, Art. II, Sec. D. Thus, Defendant's contention that federal diversity jurisdiction is not present is unsound as the indemnification limitation provision only applies to false representations under Article II, Sections H and I of the SPA which were not raised in the amended complaint.

## IV. Conclusion

For the foregoing reasons, Defendant's motion for reconsideration (ECF No. 133) is DENIED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 23rd day of March, 2021.

s/Marcos E. López<br>
U.S. Magistrate Judge