UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

FRED J. REBARBER-OCASIO,          )
                                  )
    Plaintiff,               )
                                  )
        v.                   )          No. 3:18-cv-01218-JAW
                                  )
LUIS FELICIANO-MUNOZ, et al.      )
                                  )
    Defendants.              )
_____    )
                                  )
LUIS FELICIANO-MUNOZ, et al.      )
                                  )
    Plaintiffs,              )
                                  )
        v.                   )          No. 3:16-cv-02719-JAW
                                  )
FRED J. REBARBER-OCASIO,          )
                                  )
    Defendant.               )

**ORDER ON MOTION SEEKING EXPERT DISCLOSURE**

    With trial scheduled in one month, a party filed a motion seeking information about an expert hired by the opposing party who did not produce a report and whom the opposing party has decided not to call at trial. The Court adopts the majority approach and holds that, where a party identifies an expert witness but subsequently redesignates the expert as non-testifying, the opposing party may only compel discovery related to that expert upon a showing of "exceptional circumstances" under Rule 26(b)(4)(D) of the Federal Rules of Civil Procedure. As the movant has failed to make a showing of "exceptional circumstances," the Court dismisses his motion without prejudice.

## I.     BACKGROUND

Fred Rebarber hired financial fraud expert Amanda Capo to review Luis Feliciano's financial data records, after which the parties agree Mr. Rebarber did not produce any report or include Ms. Capo as a witness.  *See Report of Final Pretrial Conference and Order* at 2 (ECF No. 189); No. 3:18-cv-01218-JAW, *Resp. in Opp'n to Mot. Req. Disc. on Waived Expert Witness (DN 166)* at 2 (ECF No. 170) (*Rebarber's Opp'n*).  On January 4, 2021, prior to the consolidation of the two cases, Mr. Feliciano filed a motion requesting discovery related to Ms. Capo's investigation and asserting the right to call Ms. Capo as a witness after reviewing her materials.  No. 3:18-cv-01218-JAW, *Mot. Req. Disc. on Waived Expert Witness* (ECF No. 166) (*Feliciano's Mot.*).  On January 11, 2021, Mr. Rebarber filed his response in opposition.  *Rebarber's Opp'n*.  On February 17, 2021, Mr. Feliciano replied.  No. 3:18-cv-01218-JAW, *Def. Feliciano's Reply to Pl. Rebarber's Opp'n to Def. Feliciano's Mot. Req. Disc. on Waived Expert* (ECF No. 182) (*Feliciano's Reply*).

## II.    THE PARTIES' POSITIONS

### A.     Luis Feliciano's Motion Seeking Expert Witness Discovery

Mr. Rebarber hired accountant and financial fraud expert Amanda Capo to review Mr. Feliciano's, Air America's, and Yellow Media, Corp.'s financial data records, but she did not produce any report and will not be a trial witness.  *Feliciano's Mot.* at 1.  Mr. Feliciano notes that "since at least January of 2019, Capo requested and was provided by Feliciano with hundreds of financial records for her evaluation as to whether Feliciano mishandled company funds."  *Id.*  Asserting that Mr.

Rebarber waived Ms. Capo's testimony by not announcing her as his witness in the parties' joint pretrial memorandum, Mr. Feliciano asserts his "right to request all of Capo's notes, memorandums, reports, and/or any other document prepared by her in relation to this case to be able to decide if Feliciano will call her as Feliciano's witness." *Id.*

### B.    Fred Rebarber's Opposition

Mr. Rebarber explains that "[u]pon further consideration following [Ms. Capo's] retainer, [he] made the determination that he would not be using Ms. Capo as an expert on these matters, proceeded to inform [Mr. Feliciano] of such decision, eliminated her from any participation in the case including not producing any report by June 29, 2019, the deadline to produce the expert reports and eventually, proceeded to omit her from his proposed expert witnesses." *Rebarber's Opp'n* at 2. He says he listed Dr. Ramon Cao as his financial expert witness, who "will be testifying on the same matters Ms. Capo would have testified on." *Id.*

Citing Federal Rule of Civil Procedure 26(b)(4)(D), Mr. Rebarber argues that Ms. Capo qualifies as an "informally consulted" expert, for whom Mr. Feliciano has not demonstrated exceptional circumstances warranting disclosure of any of her protected work product or that would allow him to retain her on his behalf. *Id.* at 2-4. He says "Ms. Capo requested numerous documents from [Mr. Feliciano] in order to formulate her opinion, many of which [Mr. Feliciano] never produced," and urges the Court to deny "unreasonable access to [his] diligent trial preparation." *Id.* at 4-5. Mr. Rebarber also contends that granting discovery related to "Ms. Capo's work

product at this stage of the proceedings is untimely and will only cause delay." *Id.* at 4. He concludes that Mr. Feliciano "would not be improperly prejudiced by a denial of his request, since he currently has proffered an economic damages expert [Mr. Diego Perdomo] and would be afforded the opportunity to cross-examine [Mr. Rebarber's] economic damages expert [Dr. Ramon Cao] at trial." *Id.* at 5.

### C.     Luis Feliciano's Reply

In reply, Mr. Feliciano asserts that "Plaintiff Rebarber never informed Defendant Feliciano that he was not going to continue using Capo as [an] expert witness and that she was an informal consultant," and instead "on November 12, 2018, Plaintiff Rebarber announced both Capo and Cao as expert witnesses." *Feliciano's Reply* at 2. Because Dr. Cao is an economist, not a financial fraud expert or accountant like Ms. Capo, Mr. Feliciano disputes that Mr. Rebarber merely substituted his experts. *Id.* He emphasizes that Dr. "Cao only included in his report his opinion as to the economic loss but did not reach any opinion as to whether Defendant Feliciano incurred in financial fraud which was Capo's proffered testimony and the object of her requests for document inspections." *Id.* at 5-6.

Mr. Feliciano goes on to present a timeline of Ms. Capo's investigations, emphasizing that he provided "extensive discovery," as she made further inquiries and demanded more financial information. *Id.* at 3. He says on March 11, 2019, he told Mr. Rebarber that he planned to depose both Dr. Cao and Ms. Capo but decided not to depose Ms. Capo "as she had not produced an expert report." *Id.* Mr. Feliciano maintains that Dr. Cao's "expert report on damages suffered by Plaintiff Rebarber

has nothing to do with the financial information requested by Plaintiff Rebarber for the forensic audit" by Ms. Capo. *Id.* at 4.

Mr. Feliciano goes on to dispute Mr. Rebarber's characterization of Ms. Capo as an "informally consulted" expert, applying the Tenth Circuit's multi-factor test in *Ager v. Jane C. Stormont Hospital and Training School for Nurses*, 622 F.2d 496 (10th Cir. 1980). *Id.* at 4. He says that "since the beginning of the case, Plaintiff Rebarber proffered Capo as his witness in forensic financial fraud analysis and Capo personally demanded and requested thousands of documents," and conducted two document inspections. *Id.* at 5. He suggests Ms. Capo's work "was very intense," and prolonged as "she was announced as an expert on November 12, 2018 and by July 18th, 2019" Ms. Capo still sought further information from him for her analysis. *Id.*

Mr. Feliciano also contends that Mr. Rebarber did not announce Ms. Capo as anything other than a "regular expert" hired to conduct a forensic audit, and her failure to produce a report does not render her an informal consultant. *Id.* As to Mr. Rebarber's concern that his request is untimely and will cause delay, Mr. Feliciano submits that he "did not know that Capo would not be [Mr. Rebarber's] witness until he did not include her in the pretrial report," particularly as Ms. Capo was still requesting information from him "as late as July 2019." *Id.* at 6. Mr. Feliciano disagrees with Mr. Rebarber's contention that he does not face prejudice without Ms. Capo's information or testimony, explaining that his own economic expert, Diego Perdomo, "did not make any analysis as to financial fraud as Capo did." *Id.*

5

Finally, Mr. Feliciano reasons that because Mr. Rebarber alleges fraud on his part "the findings of his expert must be disclosed in the interests of justice." *Id.* According to Mr. Feliciano, "[w]hen a party decides not to continue using an expert witness after the witness has reviewed all of the requested information, it has to make the witness available to the other party, as well as his report and related data." *Id.* at 7.

## III.  LEGAL STANDARD

"A party may depose any person who has been identified as an expert whose opinions may be presented at trial." FED. R. CIV. P. 26(b)(4)(A).  As to experts used only for the purposes of preparing for trial, Federal Rule of Civil Procedure 26(b)(4)(D)[1] provides:

> Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:
>> (i) as provided in Rule 35(b); or
>> (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

Interpreting Rule 26(b)(4)(D), denominated as Rule 26(b)(4)(B) prior to the 2010 Amendments to the Federal Rules of Civil Procedure, the Tenth Circuit observed that "[n]o provision in [Rule 26(b)(4)(D)] . . . expressly deals with non-witness experts who are informally consulted by a party in preparation for trial, but

---

[1]     "Former Rules 26(b)(4)(B) and (C) have been renumbered (D) and (E)." FED. R. CIV. P. 26 advisory committee's notes to 2010 amendment.

not retained or specially employed in anticipation of litigation." *Ager*, 622 F.2d at 501.

The *Ager* Court noted that "[t]he advisory committee notes to the rule indicate [that it] 'precludes discovery against experts who (are) informally consulted in preparation for trial, but not retained or specially employed.'" *Id.* (recognizing that this "preclusion not only encompasses information and opinions developed in anticipation of litigation, but also insulates discovery of the identity and other collateral information concerning experts consulted informally"). It set out a multi-factor test for whether an expert was "informally consulted," based on "(1) the manner in which the consultation was initiated; (2) the nature, type and extent of information or material provided to, or determined by, the expert in connection with his review; (3) the duration and intensity of the consultative relationship; and (4) the terms of the consultation, if any (e. g. payment, confidentiality of test data or opinions, etc.)," as well as any other relevant additional factors. *Id.*

The Tenth Circuit went on to hold "that the identity, and other collateral information concerning an expert who is retained or specially employed in anticipation of litigation, but not expected to be called as a witness at trial, is not discoverable except as 'provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.'" *Id.* at 503 (quoting FED. R. CIV. P. 26(b)(4)(B)). "The party 'seeking disclosure under [Rule 26(b)(4)(D)]

Case 3:16-cv-02719-JAW   Document 232   Filed 06/06/22   Page 8 of 14


carries a heavy burden' in demonstrating the existence of exceptional circumstances." *Id.* (quoting *Hoover v. U.S. Dept. of Interior*, 611 F.2d 1132, 1142 n.13 (5th Cir. 1980)).

## IV.  DISCUSSSION

The parties cite no First Circuit or District of Puerto Rico authority on the narrow issue of whether a party may obtain discovery about an expert once listed, but then withdrawn by an opposing party.  However, in *Jasty v. Wright Medical Technology, Inc.*, 528 F.3d 28 (1st Cir. 2008), the First Circuit discussed a similar issue.  In *Jasty*, the defendant designated a witness as an expert and the expert had been deposed.  *Id.* at 38.  At the damages trial, however, the defendant decided not to call the expert as a witness, after which the plaintiff sought to introduce the expert's deposition into evidence.  *Id.*  The trial court declined to allow the plaintiff to do so. *Id.*  In upholding that decision as within the judge's discretion, the *Jasty* Court emphasized that the district judge retained the discretion "to decide whether to require a witness to testify for an opposing party."  *Id.*

In *Bartlett v. Mutual Pharmaceutical Company, Inc.*, 731 F. Supp. 2d 184 (D.N.H. 2010), the district court addressed a somewhat analogous situation.  To prove its affirmative defenses in a products liability case, a defendant was required to present expert evidence that third-party medical malpractice caused (at least in part) the plaintiff's injuries.  *Id* at 187-88.  But the defendant failed to designate an expert witness on this issue and instead intended to rely on the testimony of the plaintiff's medical experts.  The district court observed that it did "not see how [the defendant] could elicit . . . testimony [to meet its affirmative defense burden] at trial consistent

with the Federal Rules of Evidence and the Federal Rules of Civil Procedure." *Id.* at 189. The plaintiff's counsel represented that they did not intend to present such evidence on direct examination and the Court observed that the "testimony would be beyond the permissible scope of cross-examination" and, assuming that the defendant intended to call the plaintiff's experts at trial, "it failed to make the timely expert disclosures required by [Federal Rule of Civil Procedure] 26(a)(2)(A)." *Id.* Citing *Jasty*, the district court noted that it had the discretion to allow a party to call an opponent's expert witness, but it declined to do so in those circumstances. *Id.* at 189-90.

As other courts in this Circuit have recognized, "[t]here appears to be some dispute whether, for example, the court may or ought compel the testimony of an expert witness who, having once been designated as a testifying witness, has been re-designated as a consulting expert absent the showing of 'exceptional circumstances' contemplated by Rule 26(a)(2)(D)(ii)." *West v. Bell Helicopter Textron, Inc.*, No. 10-cv-214-JL, 2017 U.S. Dist. LEXIS 164333, at *3 (D.N.H. Oct. 4, 2017) (citing *Jasty*, 528 F.3d at 39); *see also R.C. Olmstead, Inc. v. CU Interface, LLC*, 657 F. Supp. 2d 899, 904 (N.D. Ohio 2009) (adopting the majority view that where a party identified an expert as testifying but subsequently redesignated the expert as non-testifying, the opposing party was only allowed to depose that expert upon a showing of exceptional circumstances).

Overall, the purpose of Rule 26(b)(4)(D) is to "promote fairness by precluding unreasonable access to an opposing party's diligent trial preparation." *Durflinger v.*

*Artiles*, 727 F.2d 888, 891 (10th Cir. 1984).  In *Rubel v. Eli Lilly & Co.*, 160 F.R.D. 458 (S.D.N.Y. 1995), the district court for the Southern District of New York recognized four interests weighing against allowing a party to depose or call at trial its opponent's consultative, non-testifying expert witness: (1) an "important interest in allowing counsel to obtain the expert advice they need in order properly to evaluate and present their clients' position without fear that every consultation with an expert may yield grist for the adversary's mill," which the *Rubel* Court found "underlies [Rule 26(b)]'s severe limitation on discovery of consultative, as opposed to testifying, experts"; (2) the unfairness of allowing a party to benefit from its opponent's effort and expense incurred in preparing its case; (3) concerns that "allowing the use of compulsion might diminish the willingness of experts to serve as consultants" and would be unfair; and (4) the "risk of very substantial prejudice stemming from the fact of the prior retention, quite apart from the substance of the testimony." *Id.* at 460.  Thus, discovery from experts once designated as likely to testify at trial, but whose designation is subsequently withdrawn, is generally precluded, unless the movant presents "exceptional circumstances," namely that it is impossible or impracticable for the movant to seek facts or opinions on the subject by other means.

In their briefs, the parties assessed Ms. Capo's expert witness status under the Tenth Circuit's holistic, case-by-case framework.  *See Ager*, 622 F.2d at 501. According to Mr. Rebarber, Ms. Capo was only "informally consulted" as a witness, and thus her work product is protected from discovery under Rule 26(b)(4)(D).  Mr. Feliciano insists that Ms. Capo does not meet that standard.  Even accepting Mr.

10

Feliciano's characterization of Ms. Capo as a true expert under *Ager*, the Tenth Circuit's test still requires him to make a "proper showing" of "exceptional circumstances" warranting disclosure. *Id.* at 502-03 (interpreting FED. R. CIV. P. 26 1970 advisory committee's notes).

In 2010, in *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262 (6th Cir. 2010), the Sixth Circuit joined the Tenth Circuit in requiring that a party demonstrate "special circumstances" justifying their request to depose an opponent's non-testifying expert. *Id.* at 273. Discussing the commentary of the civil rules advisory committee, the *R.C. Olmstead* Court observed that Rule 26 was designed to disallow one party from "build[ing] a case on the basis of an opponent's expert." *Id.*

Here, Mr. Rebarber announced Dr. Cao and Ms. Capo as expert witnesses on November 12, 2018. He says he decided not to present Ms. Capo's findings following her accounting and fraud audit of Mr. Feliciano's financial records. Ms. Capo never produced a report and Mr. Feliciano never deposed her. *Contra Hartford Fire Ins. Co., Inc. v. Transgroup Express, Inc.*, 264 F.R.D. 382, 384-85 (N.D. Ill. 2009) (holding a party could not re-designate a testifying expert as non-testifying after the expert's deposition was scheduled and after the expert's reports were disclosed). On July 10, 2019, Mr. Rebarber requested "a list of checks . . . paid by AA to American Express and related invoices or documentation," *see Feliciano's Reply*, Attach. 1, *Disc. Communications* at 22, but did not mention Ms. Capo, or any money paid to her for her work, in that email.

11

At the upcoming trial, Mr. Rebarber's expert, Dr. Cao, will testify as to the nature and value of "the economic loss suffered by Rebarber due to Feliciano's actions and omissions." *Def.'s Witness List in Compliance with the Ct. Order (DN 189)* at 4 (ECF No. 222). Mr. Feliciano's expert Diego Perdomo "will provide opinions about the economic damages caused to Air America and its shareholders as a result of the situation of the company at the moment that Rebarber handed it to Feliciano which required investing a large amount of funds to repair, or to purchase new equipment, and to charter flights." *Feliciano, Bengoa and Air America Final Formal Witness List* at 7 (ECF No. 223). As the Court understands it, the parties' economic experts have different qualifications from Ms. Capo and neither will testify as to the exact financial fraud issue that Ms. Capo would have testified about at trial.

Based on these facts, the Court agrees with Mr. Feliciano that Dr. Cao is not a substitute for Ms. Capo as Mr. Rebarber suggests, particularly as Mr. Rebarber initially announced that he would present both experts. Regardless, that distinction does not justify Mr. Feliciano's discovery request. Mr. Feliciano will not be unfairly denied an opportunity to rebut testimony on financial fraud without Ms. Capo or her materials because, as he points out, Dr. Cao has not rendered any opinion on that issue. The jury will hear only from both parties' economic damages experts.

On balance, Mr. Feliciano has not shown that "it is impracticable for [him] to obtain facts or opinions on the same subject by other means." *R.C. Olmstead, Inc.*, 657 F. Supp. 2d at 904 (quoting FED. R. CIV. P. 26(b)(4)(B)(ii)). Mr. Feliciano stresses that he met Ms. Capo's burdensome, repeated requests for his financial records. He

12

has not demonstrated, however, why any hardship during the discovery phase of these cases presents "exceptional circumstances" for the Court to grant him special access to Ms. Capo's work product. Relevant here, Mr. Feliciano has had ample time to designate his own financial fraud expert (after Mr. Rebarber announced Ms. Capo and began his fraud investigation in 2018) and has not shown that there are no other available experts with Ms. Capo's expertise. *See id.* at 905 ("Lack of diligence is not a sufficient justification for deposing an opposing party's non-testifying expert").

In light of the posture of this long-pending consolidated case and the lack of prejudice to Mr. Feliciano at the upcoming trial if he does not have access to Ms. Capo's materials, the Court concludes that Mr. Feliciano has not demonstrated exceptional circumstances warranting disclosure of Ms. Capo's materials. *See Emhart Indus. v. Home Ins. Co.*, 515 F. Supp. 2d 228, 266 (D.R.I. 2007) (refusing to allow a party to call as a witness an expert that its opponent designated before the jury prior to trial as "cumulative, unnecessary, and certainly not worth prejudicing" the opponent, particularly as the party's "own experts had already opined on the precise issues that [the opponent's expert] would have discussed"); *Puerto Rico Aqueduct & Sewer Auth. v. Clow Corp.*, 108 F.R.D. 304, 311 (D.P.R. 1985) (applying *Ager* in denying the defendants' motion to compel disclosure of plaintiffs' non-testifying experts absent "exceptional circumstances").

Even if exceptional circumstances could be established, under First Circuit law, the Court in its discretion would not allow Mr. Feliciano with trial looming to engage in discovery about his opponent's withdrawn expert. The time for expert

discovery has long since passed and, in the Court's view, the policy against allowing a party to build his case on the other party's expert advises strongly against allowing Mr. Feliciano to discover information about a withdrawn expert in this case.

## V.    CONCLUSION

The Court DISMISSES without prejudice Mr. Feliciano's Motion for Discovery on Waived Expert (ECF No. 166).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 6th day of June, 2022

14