UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

FRED J. REBARBER-OCASIO,    )
    )
    Plaintiff,    )
    )
    v.    )    No. 3:18-cv-01218-JAW
    )
LUIS FELICIANO-MUÑOZ, et al.    )
    )
    Defendants.    )
_____)
    )
LUIS FELICIANO-MUÑOZ, et al.    )
    )
    Plaintiffs,    )
    )
    v.    )    No. 3:16-cv-02719-JAW
    )
FRED J. REBARBER-OCASIO,    )
    )
    Defendant.    )

**ORDER ON PENDING MOTIONS**

The court issues what it hopes to be the final order in a long and bitter lawsuit, the origins of which harken back to the fall of 2014. The court denies the victor's motion for reconsideration of the court's rejection of his motion for attorney's fees pursuant to Puerto Rico Rule of Civil Procedure 44.1(d). The court orders the distribution to the victor of the amount of the clerk's taxation of costs from the cash currently held in the court registry with the remainder to be paid to the unsuccessful parties. Finally, the court orders the return of the appeals bond to the unsuccessful parties.

## I.    BACKGROUND: A LONG SAGA

The long saga between Fred J. Rebarber-Ocasio and Luis Feliciano-Muñoz harkens back to the fall of 2014, when Mr. Rebarber and Mr. Feliciano negotiated the purchase and sale of Air America, a business in Puerto Rico. *See Compl.* (ECF No. 1). Mr. Rebarber founded and owned Air America, and Mr. Feliciano bought it through a stock purchase agreement inked on December 17, 2024. *Id.* ¶ 5. In 2018, when Mr. Feliciano was unable to operate Air America the way Mr. Rebarber had operated it, Mr. Feliciano cried foul and sued Mr. Rebarber for breach of contract, and in response, in 2018, Mr. Rebarber filed a separate lawsuit against Mr. Feliciano and his wife, Christel Bengoa, alleging that Mr. Feliciano's mismanagement of Air America had caused a diminution of the value of Mr. Rebarber's retained 20% stock ownership in the company. *Luis Feliciano Muñoz v. Fred Rebarber-Ocasio*, No. 3:16-cv-2719-MEL; *Fred Rebarber-Ocasio v. Luis Feliciano-Muñoz*, No. 3:18-cv-1218-JAW. On October 12, 2021, both lawsuits were consolidated. *Jt. Order on Mots. to Consolidate* (ECF No. 175).

The case went to trial beginning June 21, 2022 before a District of Puerto Rico jury. *Min. Entry* (ECF No. 256). The trial was long and hard fought. On day nine, the jury issued a verdict, which amounted to a resounding victory for Mr. Rebarber against Mr. Feliciano and, to a lesser extent, against Christel Bengoa. *Jury Verdict* (ECF No. 270). The jury found that Mr. Feliciano had engaged in gross negligence in his management of Air America and that Christel Bengoa and their conjugal partnership had benefitted from Mr. Feliciano's actions; it awarded Mr. Rebarber

$534,836.00 in damages against Mr. Feliciano and $141,400 against Ms. Bengoa and the conjugal partnership, and it denied Mr. Feliciano's breach of contract claim against Mr. Rebarber. *Id.* On July 1, 2022, the Clerk of Courts reduced this verdict to judgment. *J.* (ECF No. 271).

Unfortunately, the jury verdict did not end the antagonism between Mr. Rebarber and Mr. Feliciano. There was the practical question of collecting the judgment, and Mr. Feliciano, distinctly unhappy with the result, sought to attack it post-judgment. To this end, he set about appealing the verdict. First, he sought a new trial, an amended judgment, and remittitur, and, after some unusual delays, the Court rejected those motions on December 27, 2023. *Order Denying Mot. for New Trial, Am. J., or Remittitur* (ECF No. 380). Meanwhile, Mr. Rebarber wanted his money, and he pursued collection of the judgment. Mr. Feliciano dragged his feet about submitting a proper appeals bond, but ultimately, after much motion practice, on June 14, 2024, Mr. Feliciano and Ms. Bengoa (the Feliciano Defendants) filed an appeals bond with the Clerk of Court in the amount of $549,989.66. *Mot. in Compliance with Order Submitting Corrected Bond* (ECF No. 374).

On April 23, 2025, the Court of Appeals for the First Circuit rejected the Feliciano Defendants' appeal and affirmed the judgment. *Feliciano-Muñoz v. Rebarber-Ocasio*, No. 24-1122, 2025 U.S. App. LEXIS 9683 (1st Cir. Apr. 23, 2025). The First Circuit issued its mandate on July 17, 2025. *United States Ct. of Appeals for the First Circuit, Mandate* (Jul. 16, 2025) (ECF No. 397) (*Mandate*). On July 18, 2025, Mr. Rebarber filed a motion for bill of costs and a request for attorney's fees.

*Reinitiated Mot. Requesting Costs and Att'y's Fees* (ECF No. 399) (*Reinitiated Mot.*). On July 29, 2025, the Feliciano Defendants filed an opposition to the bill of costs and attorney's fees. *Opp'n to Mot. for Costs and Att'y's Fees* (ECF No. 400) (*Defs.' Opp'n*).

## II.    DISCUSSION

### A.    Two Resolved Issues

Over time, two major issues have been resolved. First, on October 17, 2025, the Feliciano Defendants filed a motion in compliance confirming that the parties had resolved the issue of payment of the judgment plus pre- and post-judgment interest. *Mot. in Compliance with Order Regarding Payment and Requesting Order* (ECF No. 406). In their motion in compliance, the parties informed the Court that Mr. Feliciano had paid Mr. Rebarber both the principal and a negotiated amount of the interest. *Id.* at 1. Second, on March 4, 2026, the Clerk of Courts assessed costs against the Feliciano Defendants. *Taxation of Costs* (ECF No. 418). The parties had seven days to file a motion for court review of the Clerk's taxation of costs, FED. R. CIV. P. 54(d)(1), and have not done so. The Court assumes the bill of costs issue is resolved, at least as regards any controversy about the proper amount.

### B.    Three Unresolved Issues

This leaves three pending issues. The first is attorney's fees. On July 11, 2022, Mr. Rebarber filed a request for attorney's fees. *Mot. for Costs and Att'y's Fees* (ECF No. 272). On March 6, 2023, citing Local Rule 54(a), (b) of the United States District Court for the District of Puerto Rico, the Court dismissed without prejudice the request for attorney's fees, subject to reinitiation, should Mr. Rebarber successfully

defend the then pending appeal. *Order on Bond* (ECF No. 342). The second is what to do about the cash currently held in the court registry. The third is what to do about the appeal bond still held by the Clerk of Court.

### 1. Motion for Reconsideration of Attorney's Fee Order

#### a. Procedural Background

After the First Circuit affirmed the district court judgment, it issued its mandate on July 17, 2025. *Mandate.* On July 18, 2025, Mr. Rebarber quickly filed a second request for attorney's fees. *Reinitiated Mot.* On July 29, 2025, the Feliciano Defendants filed their opposition to the request for attorney's fees. *Defs.' Opp'n.* On August 8, 2025, Mr. Rebarber filed another motion for attorney's fees. *Mot. Reiterating the Issuance of an Order to Update Bond and for Disbursement and Mot. Reiterating the Granting of Costs and Att'y's Fees* (ECF No. 402).

On October 27, 2025, the Court issued an order in which it declined to award attorney's fees to Mr. Rebarber. *Order for Award of Att'y's Fees, Bill of Costs, and for Issuance of Warrant* at 11-14 (ECF No. 409) (*Att'y's Fee Order*). The Court's decision did not sit well with Mr. Rebarber. On November 17, 2025, Mr. Rebarber filed a motion for reconsideration of the Court's October 27, 2025 order. *Mot. for Recons. of the Ct.'s Denial to Grant Att'y Fees* (ECF No. 411) (*Rebarber Mot. for Recons.*). The Feliciano Defendants' opposition was due by December 1, 2025, but they failed to file a meaningful timely opposition. Accordingly, the Court issued an order to show cause on December 8, 2025, ordering the Feliciano Defendants "to respond within fourteen days of the date of this order as to why the Court should not deem their opposition to

the motion for reconsideration waived." *Am. O.S.C.* at 2 (ECF No. 414).[1] On December 22, 2025, the Feliciano Defendants filed a response to the order to show cause. *Mot. in Compliance with O.S.C.* (ECF No. 416). On December 30, 2025, Mr. Rebarber filed a reply to the Feliciano Defendants' response. *Short Reply to Feliciano's* Mot. in Compliance with O.S.C. *(ECF No. 416)* (ECF No. 417).

### b.  Legal Standards

It is settled that "a motion for reconsideration 'cannot be used as a vehicle to re-litigate matters already litigated and decided by the Court.'" *Torres v. Gonzalez*, 980 F. Supp. 2d 143, 146 (D.P.R. 2013) (quoting *Standard Química de Venezuela v. Central Hispano Int'l, Inc.*, 189 F.R.D. 202, 205 n.4 (D.P.R. 1999)). A court should reconsider whether it "patently misunderstood a party . . . or has made an error not of reasoning but apprehension." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 82 (1st Cir. 2008). Thus, "motions for reconsideration are extraordinary remedies which should be used sparingly." *Trabal Hernandez v. Sealand Servs. Inc.*, 230 F. Supp. 2d 258, 259 (D.P.R. 2002) (quotation omitted). "For a motion for reconsideration to be granted, the Court 'recognizes only three possible grounds for any motion for reconsideration: (1) An intervening change in controlling law, (2) the availability of new evidence not previously available, and (3) the need to correct a clear error of

---

[1] On December 9, 2025, Mr. Rebarber filed a memorandum entitled, Reply to Defendant's Opposition to Motion for Costs and Attorney's Fees (ECF No. 412), which was docketed under ECF Number 415. However, despite the title, in the body of the memorandum, Mr. Rebarber addressed only the bill of costs and not attorney's fees. *See Reply to Def.'s* Opp'n to Mot for Costs and Att'y's Fees *(ECF No. 412)* at 1-3.

law.'" *Torres*, 980 F. Supp. 2d at 146 (quoting *Dodge v. Susquehanna Univ.*, 796 F. Supp. 829, 830 (M.D. Pa. 1992)).

### c.    Discussion

Although the Court is sympathetic to Mr. Rebarber, it remains unconvinced that he has sustained the significant burden that the law imposes under Puerto Rico Rule of Civil Procedure 44.1(d) to obtain attorney's fees from a losing party. In its October 27, 2025 order, the Court set forth the high standards a moving party must meet to obtain an award of attorney's fees under Rule 44.1(d). *See Att'y's Fee Order* at 11-13. Mr. Rebarber has not suggested that the Court's description of the law is in error. Instead, he disagrees with the Court's evaluation of the facts, and so the Court turns to the evidence.

The Court recalls Attorney Olmo's description of Mr. Rebarber as a "con artist," a description as memorable and unfortunate as it was incorrect. From the Court's perspective, Mr. Rebarber is as far from being a con artist as can be imagined. His life story revealed a highly intelligent, ambitious, entrepreneurial, and detail-oriented man, who by hard work and talent built a small airline business from the ground up, learning not just how to fly planes, but how planes work, memorizing Federal Aviation Administration regulations, cultivating good working relations with regulators in an intensely regulated business, and carefully hawking over the balance sheet. The Court came to admire Mr. Rebarber and suspects the jury did as well.

Mr. Feliciano is also admirable but possesses a markedly different skill set than Mr. Rebarber. Mr. Feliciano has a knack for marketing, which is a valuable and

often lucrative business skill.  Mr. Feliciano is also highly intelligent, ambitious, and entrepreneurial.  But he made a serious mistake when he purchased a small airline, a business where he was manifestly out of his depth.  Mr. Feliciano did not bring any of the know-how that Mr. Rebarber possessed in abundance to the operation of a small airline company, and instead Mr. Feliciano believed that he could grow the business by marketing, when the business needed not just marketing but also careful, intense, hands-on attention to detail.

When the business went south, Mr. Feliciano, like many successful people, had a difficult time blaming himself, and sought to blame others, focusing on Mr. Rebarber.  As with any complex business deal, there was enough evidence, when viewed from Mr. Feliciano's perspective, that presented a jury question as to what caused Air America to fail.  To prove his case against Mr. Rebarber, Mr. Feliciano pointed to the part of the purchase and sale agreement that he believed constituted a representation by Mr. Rebarber that Air America was complying with all aviation standards and that the aircraft were in an adequate working condition.  When Mr. Feliciano took over the company, he said he discovered that not all aircraft were in adequate working condition and that he had to spend substantial sums to repair the aircraft.  Mr. Feliciano also came to believe that Mr. Rebarber had falsified FAA-mandated records, including logbooks.  Mr. Feliciano's case was not just based on his own say-so, he buttressed his accusations by calling as witnesses Luis González Acevedo, a mechanic during Mr. Rebarber's time at Air America, Frank Nieves,

assistant to the director of maintenance during Mr. Rebarber's management, and Luis Irizarry, an aviation expert.

From the Court's perspective, Mr. Rebarber's case against Mr. Feliciano was much stronger than Mr. Feliciano's case against Mr. Rebarber. The contrast between the two men, each talented in his own way, was stark. Mr. Rebarber had created Air America by dint of extremely hard work, impressive talent, and attention to detail. Marshaling countervailing evidence, Mr. Rebarber convincingly demonstrated that Mr. Feliciano's accusations were simply wrong; Mr. Rebarber had not cooked the books, the airplanes were as represented, and Mr. Feliciano had squirreled money away from Air America and deposited it in his own personal account, thereby diminishing the value of Mr. Rebarber's share of the company. In short, Mr. Feliciano's marketing talents, valuable as they may be in other circumstances, were not a match for the needs of this small airline company.

Even though Mr. Rebarber turned out to be a much more convincing witness and the jury's verdict no surprise, the Court does not agree that Mr. Feliciano's lawsuit was the result of his or his lawyer's "'stubbornness, obstinacy, rashness, and insistent frivolous attitude.'" *Fazio v. James River Ins. Co.*, No. 20-1074 (MEL), 2021 U.S. Dist. LEXIS 108087, at *6-7 (D.P.R. Jun. 7, 2021) (quoting *Feliciano Rivera v. Pina Nieves*, 292 F. Supp. 3d 560, 567 (D.P.R. 2018)). The Court agrees with Mr. Rebarber that, even before trial, Mr. Feliciano and Attorney Olmo should have been more clear-eyed about lack of merit in the case against Mr. Rebarber, but as Attorney Olmo's "con man" description of Mr. Rebarber reveals, Mr. Feliciano and Attorney

Olmo were deeply invested in their own narrative, were enshrouded in the fog of litigation and advocacy, and were unable to see the hard facts that became apparent during trial.

The Feliciano Defendants' decision to challenge the verdict both in this Court and in the First Circuit brings them closer to the edge of what was reasonable. However, this Court treated the post-judgment motion seriously and issued a seventy-eight-page decision, rejecting the Feliciano Defendants' post-judgment motion. *Order Denying Mot. for New Trial, Am. J., or Remittitur* at 1-78. Similarly, the First Circuit treated the Feliciano Defendants' appeal seriously and issued a thoughtful, multi-page decision, affirming the judgment. *Feliciano-Muñoz*, 2025 U.S. App. LEXIS 9683, at *1-10. The First Circuit did not dismiss the appeal out of hand, nor did it impose sanctions on the Feliciano Defendants for a frivolous appeal. *See* FED. R. APP. PRO. 38 ("Frivolous Appeal—Damages and Costs"); 1ST CIR. LOC. R. 38.0 ("Sanctions for Vexatious Litigation").

The Court continues to believe that this case was an ideal one for jury resolution, and the fact that once all the evidence was in, it seemed inevitable that Mr. Rebarber would end up as the victor, the Court remains unconvinced that Mr. Feliciano was "'unreasonably adamant or stubbornly litigious, beyond the acceptable demands of the litigation, thereby wasting time and causing the court and the other litigants unnecessary expense and delay.'" *Flovac, Inc. v. Airvac, Inc.*, No. 12-1348 (SEC), 2017 U.S. Dist. LEXIS 48081, at *2 (D.P.R. Mar. 30, 2017) (quoting *De León v. Corporación Insular de Seguros*, 931 F.2d 116, 127 (1st Cir. 1991)). Even though

less true, the same is true of the Feliciano Defendants' refusal to accept the jury verdict and their pursuit of remedies in this Court and at the Court of Appeals despite having received more than their day in court.

### d.    The Distribution of Cash in the Court Registry

Regarding the cash in the court registry, on April 21, 2023, Mr. Rebarber deposited $9,202.38 in the court registry. *Mot of Deposit of Fund* (ECF No. 364) (*Mot. of Deposit*); *Order* (ECF No. 365). Mr. Rebarber had obtained these funds by garnishment of one of Mr. Feliciano's accounts. *Mot. of Deposit* at 1. After the First Circuit issued its mandate on July 17, 2025, *see Mandate*, Mr. Rebarber moved for an order releasing the cash in the court registry to him "as partial payment, pending on the final adjudication of the costs and attorney's fees amount requested." *Mot. Reiterating the Issuance [of] an Order to Update Bond and for Disbursement* (ECF No. 398). On August 14, 2025, the Feliciano Defendants objected to Mr. Rebarber's request for the cash in the court registry in part because the parties were still disputing the correct figure to be assessed as costs. *Resp. to Mot. Reiterating the Issuance of an Order to Update Bond and for Disbursement and Mot. Reiterating the Granting of Costs and Att'y's Fees* (ECF No. 402).

On October 14, 2025, the Court issued an order to clarify, expressing confusion as to the status of payment, including the status of the amounts in the court registry. *Order to Clarify* (ECF No. 404). After the parties responded, the Court issued an order dated October 27, 2025, concluding that it was wiser to retain the cash in the court registry while the issues of attorney's fees and the bill of costs were being

resolved, especially since it seemed at that time that the amount of the bill of costs was going to exceed the amount of available cash. *Order for Award of Att'y's Fees, Bill of Costs, and for Issuance of Warrant* (ECF No. 409).

With the issuance of the Clerk of Court's determination that the correct figure for the bill of costs is $8,556.25, the available cash in the court registry now exceeds the amount owed as costs from the Feliciano Defendants to Mr. Rebarber. The Court confirmed with the Clerk of Court that as of March 27, 2026, the date of this order, the amount of cash in the court registry in this case is $9,606.43. The Court therefore ORDERS the Clerk of Court to remit $8,556.25 from the cash in the court registry to Fred J. Rebarber-Ocasio in payment in full of the bill of costs, and to remit the remainder, $1,050.18 to Luis Feliciano-Muñoz and Christel Bengoa to reflect the available cash in excess of the amount of the bill of costs.

### e.  The Bond

As the Feliciano Defendants have paid the full amount due from the judgment, including interest, and have paid the full amount due under the bill of costs, the Court ORDERS the Clerk of Court to return to Luis Feliciano-Muñoz and Christel Bengoa Bond Number 23239404 dated May 4, 2023 issued by United Surety & Indemnity Co. in favor of Fred Rebarber-Ocasio.

## III.  CONCLUSION

The Court DENIES Fred J. Rebarber-Ocasio's Motion for Reconsideration of the Court's Denial to Grant Attorney Fees (ECF No. 411). The Court sua sponte ORDERS that the Clerk of Court issue payment from the $9,606.43 in cash held in

the court registry in the total amount of $8,556.25 to Fred J. Rebarber-Ocasio in payment in full for the taxation of costs assessed by the Clerk of Court and issue payment of the balance, currently $1,050.18 to Luis Feliciano-Muñoz and Christel Bengoa. Finally, the Court sua sponte ORDERS the Clerk's Office to return the appeal bond dated May 4, 2023 issued by United Surety & Indemnity Co. currently held by the Court to Luis Feliciano-Muñoz and Christel Bengoa.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 27th day of March, 2026